## THE STATE v. WOOD, *Appellant*.

1. **Continuance**: CRIMINAL LAW. A person committed to jail upon a criminal charge, is under no obligation to prepare for trial until an indictment has been found. If, as soon as he is indicted, he sets about diligently to make his preparations, but does not succeed in securing the attendance of witnesses whose testimony is material to his defense, he is entitled to a continuance.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

Defendant was arrested and committed to jail upon a charge of horse stealing on the 8th day of August, 1877. The other facts appear in the opinion of the court.

*H. B. Hamilton* for appellant.

*J. L. Smith*, Attorney-General, for the State.

HENRY, J.—On the 18th day of September, 1877, the defendant was indicted in the Jasper circuit court, charged with having stolen two horses, the property of Peter Sealey, on the 5th day of August, 1877. On the 27th day of September, 1877, the cause was called for trial and the defendant filed the following affidavit for a continuance: And the said Allen Wood, after being duly sworn, upon his oath says he cannot safely proceed to trial at the present term of this court for want of material evidence.

And the said Wood would show to the court that on the 18th day of September, 1877, he was indicted in this honorable court, charged with stealing two horses, the property of Peter Sealey. Affiant says as soon as he was informed of the charge against him, he wrote and caused to to be written, two letters, to John Flannagan, at Corry and St. Joseph, and —— Bodenhammer, at Marshfield and Lebanon; that he received no reply to said letters until the 25th day of September, 1877, when he learned that the deposition of said John Flannagan could be taken at St. Joe, Missouri, where the said Flannagan resided; that affiant did not learn of the said Flannagan's whereabouts until the receipt of the letter aforesaid, from the fact that at the time affiant met said Flannagan hereinafter mentioned, said Flannagan represented to affiant that he, said Flannagan, was going to the Dade county mines and expected to remain there during the winter, and affiant says that there was with, and in company of said Flannagan at this time, the aforesaid Bodenhammer; that he wrote, and caused to be written, divers letters to said Bodenhammer at Marshfield, Lebanon and other places, which he thought would be most likely to reach him; that on the —— day of September, 1877, he received a letter from said Bodenhammer, stating that he would attend this term of this court to testify in defendant's behalf; that said Bodenhammer has not more than had time to get here, had he started from Lebanon, the place where he was staying, on receipt of affiant's letter informing him of the day fixed for trial. Affiant says he cannot procure the testimony or attendance of said Flannagan in time to be used at the present term of this court, but that he can procure the same to be used at the next term of this court, from the fact that the said Flannagan, instead of stopping in Dade county, has returned to St. Joe, and will, as affiant is informed, remain there all winter; that unless the said Bodenhammer should arrive in time to testify at this term of court, affiant can procure his deposition to be used in evi-

dence at the next term of this court. Affiant says he expects to prove and will be able to prove, by both of said witnesses, that on the morning of the 6th day of August, 1877, two men who said they were from Texas, came to the camp where said Flannagan, Bodenhammer and affiant had been stopping over night and took breakfast with defendant and others; that said Bodenhammer was acquainted with the Texas parties and said he was all right; that said White said he wanted to take the train to Springfield and would sell said horses very cheap; that after considerable conversation, affiant purchased said horses with the saddles and bridles thereon, and paid White in cash therefor; that a bill of sale was drawn up and witnessed by said Bodenhammer, who assured affiant that he could rely upon the representations of said White. Affiant says he knows of no other witnessess or witness by whom he can prove any of the facts aforesaid, except by said Flannagan and Bodenhammer, and —————, whose real name affiant has forgotten and of whom he has been unable to learn anything since the trade aforesaid. Affiant says he verily believes that if the cause is continued until the next term of this court, he can procure the testimony aforesaid; that this application is not made for vexation or delay, but that justice may be done; that he could not, under any process whatever, have procured said testimony earlier unless the parties of their voluntary accord should in person attend this court.

ALLEN WOOD.

Subscribed and sworn to before me this 27th day of September, 1877.

M. TAYLOR, Clerk.

By B. F. HACKNEY, D. C.

His application for a continuance was refused and the defendant was compelled to proceed to trial, which resulted in his conviction and sentence to the penitentiary for a term of six years. The only question presented for consideration is the sufficiency of the affidavit for a continu-

ance.   By the first section of article 5 of the act regulating
practice in criminal cases, Wag. Stat. 1094, " all indict-
ments shall be tried at the first term at which defendant
appears, unless the same .be continued for cause."

Is a defendant required to use any diligence to prepare
for trial before indicted?   Until indicted there is no cause
pending against him in the circuit court, and he could not
have subpœnas for witnesses in a cause not pending.   If
one is charged with an offense before a justice of the peace,
the proceedings before him are to ascertain whether an
offense has been committed, and there is probable cause to
believe the prisoner guilty thereof, and all examinations
and recognizances taken by him he is required to certify
and deliver to the clerk of the court in which the offense
is cognizable on or before the first day of the next term.
If the accused be committed to jail by the justice and the
justice file the examinations, as he may, on the first day of
the term of the circuit court, and on that day as may be,
the grand jury return an indictment against the prisoner,
the. cause is triable at that term, and yet there could not
have been a cause pending in the circuit court before the
indictment found and the papers were returned.   Nothing
on the court docket or in the clerk's office would have
warranted the clerk in issuing subpœnas for witnesses for
the accused, and it makes no difference if the justice file
the papers before the commencement of the term.   They
are only deposited with the clerk to be used before the
grand jury, and depositing them with the clerk has no
more significance than if the law had required them to be
deposited elsewhere for that purpose.   There is nothing in
the act to countenance the idea that a cause is pending in
the circuit court against one accused of crime until an in-
dictment shall have been preferred against him.   The law
presumes every one innocent until the contrary appears,
and one accused of crime, until the grand jury shall have
passed upon his case, has a right to rest upon the same
presumption and believe that he will not be indicted.   The

defendant, here, had a right to presume that he would not be indicted, and was under no obligations until indicted to make any effort to prepare for trial.

After he was indicted did he use proper diligence to get ready for trial? From the affidavit it appears that defendant had met Flannagan in company with Bodenhammer, and learned from Flannagan that he was going to the Dade county mines to remain during the winter. It is clear from the correspondence between accused and Flannagan, although not expressly stated, that the accused had information that led him to doubt as to the whereabouts of Flannagan. He wrote to him at Corry, in Dade county, and at St. Joseph, Buchanan county, and the result of that correspondence shows that his doubts were justified, for he received information that he was at St. Joe. If he had merely wanted delay he could have acted on the information first received and sent a subpœna for Flannagan to Dade county, but the facts disclosed in the affidavit rather show that defendant was in good faith endeavoring to get ready for trial. He did not know where Bodenhammer was, but wrote to Marshfield, Lebanon and other places where he thought he might be found, and learned that he was at Lebanon. A subpœna to that county would, perhaps, have been served on Bodenhammer, but if defendant was not informed where Bodenhammer was to be found and was honestly endeavoring to ascertain the fact, it is not to be regarded as a circumstance fatal to his application, that he was found in one of the counties to which he directed a letter to him. But if the affidavit be held insufficient as to Bodenhammer, it is in our judgment sufficient as to witness Flannagan, and although inclined to sustain the circuit court in refusing applications for continuance, this case presents an abuse of discretion in that matter which demands our interposition. The circuit court probably erred in consequence of believing contrary to our views, that defendant should have made preparation for trial after he was committed to jail and before he

was indicted. The judgment is reversed, NAPTON and HOUGH, JJ., concurring; SHERWOOD, C. J., and NORTON, J., dissenting.

REVERSED.