## WILLIAM BLIGE, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An application for the continuance of a cause is addressed to the sound discretion of the court, and ordinarily such discretion will not be interfered with by the appellate court. But where the court can see that the rights of the party may have been jeoparded, and the rule in regard to the application has been fully complied with, and there has been no previous delay, and especially when the application is made on the very day of the finding of the indictment, this court will control such discretion.

2. On the trial of a prisoner for an assault with a deadly weapon with a premeditated design to effect the death of the person assaulted, it is not sufficient for the court to charge the jury that "the assault must have been made with a dangerous or deadly weapon." The question of premeditation is also a fact for the jury to find, and they should be satisfied of such fact by the evidence, beyond a reasonable doubt.

3. To enable this court to determine that there was error in the refusal of the court below to charge the jury upon the law, with reference to proof made on the trial, upon which refusal so to charge the alleged errors are based, such evidence should be brought here in the bill of exceptions in order to inform this court as to the applicability of the request to the facts proved.

4. In no case, civil or criminal, will an appellate court indulge presumptions adverse to the correctness of the rulings of the court below. The presumptions which are indulged in are in support of the judgment of the court.

5. When either the State's Attorney or the attorney for a defendant, in cases provided for by Chapter 2096, Laws, desire the court to charge the jury in writing, a request to that effect must be made in writing before the evidence is closed. The party cannot subsequently except to the oral charge, unless he has complied with the law in that respect.

6. A weapon may be a deadly weapon, although not especially designated for offensive or defensive purposes, or for the destruction of life or the infliction of injury.

Writ of error to the Circuit Court for Hillsborough county.

The facts of the case are stated in the opinion.

*J. B. Wall* for Plaintiff in Error.

*Attorney-General* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

In October, A. D. 1883, William Blige was indicted in Hillsborough county for an assault with intent to commit murder. The indictment charges such assault to have been made by Blige upon one Samuel Ingraham, with an iron weight, which he held in his hand, such weight being a deadly weapon. This indictment was filed on the 10th day of October. On the same day the attorneys for the defendant, Blige, caused a subpœna to be issued by the Clerk of the Circuit Court to Nixon Brown and Thomas White-head, commanding them to appear in Court on that day, to testify in behalf of the defendant. This subpœna was served the same day on both of the witnesses, as appears by the return of the sheriff thereon in the record. On the same day the defendant moved for a continuance of the cause upon an affidavit made by him as follows:

" *In the Circuit Court, Sixth Circuit of Florida, in and for
Hillsborough county, Fall Term, A. D. 1883:*

THE STATE OF FLORIDA
      vs.     } Assault with intent to murder.
WILLIAM BLIGE.

Now, on this 10th day of October, A. D. 1883, comes the defendant, William Blige, who being duly sworn, says that Thomas Whitehead and Nixon Brown are material witnesses for his defence ; that he expects to prove by said

witnesses that about fifteen or twenty minutes before the difficulty took place in which he is charged with assaulting the said Samuel J. Ingraham, that the said Ingraham assaulted the defendant on board the steamship Lizzie Henderson, on which defendant was employed, cursed and abused defendant, threatened his life, and attempted to throw defendant overboard, and was prevented from doing so by one of the witnesses, and that this was done without any sufficient provocation on part of the defendant; that as soon as the bill of indictment was returned against defendant, his counsel filed a præcipe for said witnesses and tendered the fees for issuing subpœnas; that said witnesses are both employed on board the said steamship Lizzie Henderson, which steamship had sailed before the finding of said bill of indictment; and affiant is informed and believes that said witnesses could not be gotton here during the present term of the court; that they are both residents of this county, and affiant expects to have them present at the next term of court; that they are not absent by his consent or procurement, directly or indirectly given; that he cannot safely go to trial without their testimony, or that of at least one of them; that he has no other witness by whom he can prove these facts, and that this application is not made for delay only; wherefore a continuance is prayed."

This affidavit was subscribed and sworn to before the clerk of the court on the 10th day of October, 1883. The cause was called on the same day, and the motion for continuance was denied. The counsel for defendant excepted to such denial. On the 13th day of October the defendant plead not guilty, was tried, found " guilty of an assault with intent to murder, as charged in the indictment."

The counsel for the defendant moved for a new trial for the following reasons:

1st. Because the court erred in refusing the continuance prayed for by defendant's counsel.

2d. Because the court erred in refusing to charge the jury, " that before they can convict the prisoner of the charge as laid in the indictment they must be satisfied from the evidence, beyond a reasonable doubt, that the defendant made an assault on Samuel Ingraham with a deadly weapon, and with a premeditated design to take the life of the said Ingraham," as prayed by the defendant's counsel.

3d. Because the court erred in refusing to charge the jury as prayed by defendant's counsel, "that when A. assaults B., and within fifteen minutes thereafter angry words having continued to pass at intervals between the parties, B. assaults A., both assaults constitute a part of the *res gestae*, and are to be taken as parts of one and the same transaction."

4th. Because the court erred in refusing to charge the jury as asked by defendant's counsel, " that a two pound scale weight, such as was exhibited in court as the instrument with which the alleged assault was committed, is not a deadly weapon within the meaning and intendment of the statute under which this indictment was found."

5th. That the court refused to charge the jury, " that although the officer in command of a ship has a legal right to discharge any of the employees, he has no right to compel said employee to leave the vessel, or to use force to eject him therefrom without giving him an opportunity to get his clothes or other property which might be on the vessel."

6th. Because the court erred in merely indorsing upon the foregoing instructions prayed for by defendant's counsel " Refused," without declaring to the jury in writing his ruling thereupon as presented, and pronouncing the same to the jury as given or refused.

7th. Because the court erred in merely indorsing upon the 6th instruction prayed for by defendant's counsel "Given," without declaring to the jury in writing his ruling thereupon as presented, and pronouncing the same to the jury as given or refused.

8th. Because the court erred in refusing to charge "that a deadly weapon, within the meaning of the statute under which this indictment is brought, is such a weapon as is made and designated for offensive and defensive purposes, or for the destruction of life or the infliction of injury."

9th. Because the court erred in merely indorsing upon the foregoing instructions asked for "Refused," &c.

10th. Because the court erred in delivering a part of his charge to the jury in writing and part orally.

11th. Because the court erred in signing and sealing a part of his charge to the jury, and giving a part thereof without signing and sealing.

12th. Because the court erred in not signing and sealing his entire charge to the jury.

13th. Because the verdict is contrary to the law.

14th. Because the verdict is contrary to the evidence.

The court overruled the motion for new trial, and the defendant's counsel excepted. Judgment and sentence followed. From this judgment the defendant brings his case into this court by writ of error.

The errors assigned by the plaintiff in error are the same as assigned on the motion for new trial, except that another error is assigned in that the court overruled said motion.

As to the first error assigned in refusing the continuance of the cause as asked for by the defendant's counsel, the record shows a conflict in the evidence upon this point. The return of the sheriff on the subpœna issued to Brown and

Whitehead, as witnesses for the defendant, shows that it was served on both of them on the tenth day of October, 1883. On the same day an affidavit is used, of the defendant, on a motion for a continuance, in which it is stated that the two persons named in the subpœna were employed on the steamship Lizzie Henderson, which had sailed from the port previous to the filing of the indictment. The indictment was found and filed on that same day. It nowhere appears to what port she had so sailed, or whether or not such port was outside of the county of Hillsborough, in which such court was being held. Under the circumstances of this case we must hold that the return of the sheriff is correct, and as all the facts as they appear in the record thus far transpired on the same day, to wit: the tenth day of October, that the vessel had sailed subsequent to the issuing of the subpœna, and its service by the sheriff, probably without the knowledge of the defendant or his counsel. The affidavit shows that both such witnesses so subpœnaed were employees on the steamer, and although there is no evidence beyond that fact in the record, the probabilities are that they went with her. The indictment charges that the assault was made on the fifth day of October and was filed the tenth, and all the proceedings previous to the trial were on the tenth, the trial and verdict being on the thirteenth of the same month.

The affidavit upon which the motion for a continuance was based comes up to the rule as laid down in Harrell vs. Durrance, 9 Fla., 490, and in Gladden vs. The State, 12 Fla., 562. The application is addressed to the sound discretion of the court, and ordinarily such discretion will not be interfered with by the appellate court. But when the court can see that the rights of the party may have been jeopardized, and the rule in regard to the application had been fully complied with and there has been no previous

delay, and especially when the application is made on the very day of the finding of the indictment, this court will control such discretion. We think a continuance should have been granted. McNealey and Roulhac vs. The State, 17 Fla., 198; Sanford vs. Cloud, 17 Fla., 532, 452; The State vs. Wood, 68 Mo., 444; The State vs. Hagan, 22 Kan., 490.

The second error assigned that the court refused to charge the jury " that before they can convict the prisoner of the charge as laid in the indictment they must be satisfied from the evidence, beyond a reasonable doubt, that the defendant made an assault on Samuel Ingraham with a deadly weapon and with a premeditated design to take the life of the said Ingraham," is well assigned. This was refused for the reason, as appears by the record, " because the jury had already been instructed that the assault must have been made with a dangerous or deadly weapon." This was not sufficient in itself. The question of premeditation was a question of fact for the jury, and if any reasonable doubt existed in the minds of the jury as to the premeditated design to take life, the defendant was entitled to the benefit of such doubt. The province of a jury is to find the facts ; among these facts so to be found was not only that the assault was made with a deadly weapon as charged in the indictment, but also that such assault was made with a premeditated design to effect death. Ernest vs. The State, 20 Fla., 383 ; Savage and James vs. The State, 18 Fla., 909.

There is none of the evidence taken upon the trial embodied in the bill of exceptions, and this court is not informed how the refusal of the court to charge as requested by the defendant's counsel, as is alleged in the third and fifth errors, could be so assigned as errors. We must take it for granted that there was no evidence in the case to warrant the court to charge upon those questions as requested.

To enable this court to determine that there was error in such refusal, the evidence should have been brought here in the bill of exceptions, which was duly signed and sealed by the court, and upon which refusal so to charge the alleged errors are based. In no case, civil or criminal, will an appellate court indulge presumptions adverse to the correctness of the rulings of the court below. The presumptions which are indulged in are in support of the judgment of the court. Bodie vs. State, 52 Ala., 395.

The statute provides that "whoever assaults another with a deadly weapon with a premeditated design to effect the death of the person assaulted, shall be deemed guilty of an assault with intent to murder," &c. Under this law this indictment was found. Mc.C Dig., 354, §29.

The fourth assigned error is that the court refused to charge the jury "that a two pound scale weight, such as was exhibited in court as the instrument with which the alleged assault was committed, is not a deadly weapon within the meaning and intendment of the statute under which this indictment was found." There is no evidence before us as to what the weapon was with which the assault was committed, but the indictment charges it to have been with "a certain iron weight, said weight being then and there a deadly weapon," and the jury by their written verdict found the prisoner "guilty of an assault with intent to murder as charged in the indictment." If the evidence had shown that the iron weight was a two pound scale weight, perhaps the request should have been granted, but there is before us no evidence of that fact, and we cannot know of the size or weight of the iron with which the assault was made. It is alleged to have been a deadly weapon and the jury have, by their verdict, determined that it was such a weapon. If the indictment was incorrect in charging the assault to have been made with a

deadly weapon, the defendant could have taken advantage of it before trial, by moving to quash, or even after verdict, by his motion in arrest of judgment, but this court cannot here, without the evidence before it, say that the court should have charged as the counsel requested.

The sixth, seventh, ninth, tenth, eleventh and twelfth alleged errors will be considered together. The law, chap. 2096, 1877, provides that in all felonies not punished capitally the judge may charge the jury orally, unless they are requested by the State Attorney, or attorneys for the defendant, to charge the jury in writing; which request shall be in writing before the evidence in the case is closed. There is no such request on the part of either the State Attorney, or the attorney for the defendant in the record; on the contrary, the Judge certifies that " the court gave no charge in writing in this cause except the instructions asked by the State, and the defendant. The defendant did not ask the court to reduce the charge to writing." They submitted to the oral charge of the Judge to the jury given in accordance with the law. The instructions prayed for seem to have been in writing, and the Judge under his hand and seal, in the bill of exceptions, certifies that they were given or refused. He also certifies as above, that *except* the written instructions asked for, his charge was given orally, thus, in effect, saying that he did give or refuse the instructions asked for in writing. There is no evidence in the record that they were not given or refused in exact compliance with the law, but on the contrary, they were signed and sealed by the Judge and made a part of it. Sherman vs. State, 17 Fla., 888 ; Southern Ex. Co. vs. Van Meter, 17 Fla., 783; Stewart vs. Mills, 18 Fla., 57.

The eighth error assigned is in the courts refusing to charge " that a deadly weapon, within the meaning of the statute under which this indictment is brought, is such a

weapon as is made and designated for offensive and defensive purposes, or for the destruction of life or the infliction of injury."

The counsel for the defendant, in his argument, says: Deadly weapons within the meaning and contemplation of ·the law are such only as *ex vi termini* import their adaptability to the destruction of life, or the infliction of bodily injury, and not such instruments as might be utilized for such purpose. Mr. Bishop, in his "Statutory Crimes," says: "The term 'deadly weapon' occurs in the common law of homicide and in various statutes. It is a weapon likely to produce death or great bodily injury. In a case of doubt, the manner in which it was used may be taken into the account in determining whether or not it was deadly. And when the facts are all established, the question whether a particular weapon was deadly or not is one of law for the court; yet practically, as in most instances, the establishment of the fact awaits the rendition of the verdict, the jury must pass upon this question under instructions from the court." The court did not err in refusing to charge as requested by the defendant's counsel. A weapon may be deadly although not especially "designated for offensive and defensive purposes, or the destruction of life, or the infliction of injury." In the case of the State of Minnesota vs. Dineen, 10 Minn, 407, where the defendant was indicted for an assault with intent to do great bodily harm, being armed with a *dangerous* weapon, the court say : " A dangerous weapon is one likely to produce death or great bodily harm. A stone may, or may not be a dangerous weapon, depending upon its size and other circumstances. A large heavy stone in the hands of a man intending to do great bodily harm is likely to produce that result, and cites 1 Rus. on Cr., 473, 5 Am. Ed. The court might have said with equal truth that such a weapon was

a deadly weapon when used as is charged in this indictment with a premeditated design to effect death. This indictment charges that the assault was made with an "iron weight, being then and there a deadly weapon." There is none of the evidence embodied in the record, and it is impossible for us to tell the length, breadth or diameter of such iron weight. The jury, however, having such evidence before them under the instructions of the court, (none of which are here only as excepted to,) have found that such iron weight was a deadly weapon.

In the case of Shadle vs. The State, 34 Texas, 572, the court say : " When a gun or pistol is used simply as an instrument to strike with, it is not necessarily a deadly weapon, but would be such or not according to its size and the manner of using it; and these facts should be determined by a jury." In Skidman vs. The State, 43 Texas, 93, the same court uses the following language: " Whether a pistol is a deadly weapon, when used to strike with as a club or stick, must depend upon its size or weight in connection with the manner of its use and the part of the person that is stricken with it. A deadly weapon is defined to be 'one likely to produce death or great bodily injury.' A pistol used to strike with is nothing more than a piece of iron of the same size, weight and shape. There may be five or six shooting pistols so small that they would not, when so used, be likely to produce death or serious bodily injury." See also Chambers' vs. The State, 42 Texas, 254.

In the case of Kruger vs. The State, 1 Neb., 365, cited by defendant's counsel, the court in the opinion says: The indictment fails to charge that the weapons with which the defendants made the assault were deadly weapons, or that the names given to them import that they were such. They were described as being " weapons, to wit: wooden clubs." They say that to warrant a conviction under the

section of the criminal code of that State under which the indictment was found, it is necessary that the assault be made with a deadly weapon, or with "some other instrument or thing fitted to occasion death, in the use to which it is put. If it be a weapon, the ordinary name of which, *ex vi termini*, imports its deadly character, *e. g.*, a sword, gun or pistol, it would be sufficient to describe it by such name; but in other cases the instrument or thing used should be described and charged to be deadly."

In State of Nevada vs. Nappe, 6 Nev., 113, the indictment was for an assault with a deadly weapon, with intent to commit murder. The court say: "To constitute, then, the crime of which defendant was convicted, he must have made an unlawful attempt with a weapon deadly, either in its nature, or *capable of being used in a deadly manner*, intending to inflict a bodily injury and with the present ability so to do."

In the case of Hunt vs. The State, 6 Texas Court of Ap., 663, the court say: " As to whether or not the weapon is, in fact, a deadly weapon, is matter of proof, and depends in some cases upon the mode and manner of its use."

In Kouns vs. The State, 3 Texas Ct. A., 13, it is said: " A chair is not necessarily a deadly weapon ; whether it is such must depend upon its size or weight, in connection with the manner of its use and the part of the person that is stricken with it."

It will be seen from the cited cases that a gun or pistol made for both offensive and defensive purposes, are not, under certain circumstances, and without due proof, considered by the courts as deadly weapons ; while a stone, axe or chair may be considered dangerous or deadly weapons, depending entirely upon the proof of the mode and manner of their use. We believe the true rule is that laid down in the case of The United States vs. Small, 2 Curt., C. C.,

48

241, inserting the words " deadly weapon," when the word " dangerous weapon is used." It is there said : " In many cases it is practicable for the court to declare that a particular weapon was or was not a dangerous weapon within the meaning of the law. And when it is practicable it is a matter of law, and the court must take the responsibility of so declaring. But when the question is, whether an assault with a dangerous weapon has been proved, and the weapon might be dangerous to life or not, according to the manner in which it was used, or according to the part of the body attempted to be struck, I think a more general direction must be given to the jury; and it must be left for them to decide whether the assault, if committed, was with a dangerous weapon." Such is the rule adopted in the case of the State of Nevada vs. Rigg, 10 Nevada, 284.

The judgment must be reversed for the reasons above assigned, and a new trial awarded.