PERRY ACREE v. STATE

149 So. 15, 576.
150 So. 717.
En Banc.
Order Filed July 18, 1933.
Opinion Filed Nov. 7, 1933.

*Martin & Martin*, for Plaintiff in Error;

*Cary D. Landis*, Attorney General, and *Roy Campbell*, Assistant Attorney General, for the State.

BUFORD, J.—The purported transcript of record lodged in this Court is in such condition that the Court cannot properly assume to determine the merits of the case.

We would be warranted in entering an order summarily dismissing the same, but on account of the fact that the plaintiff in error was convicted of murder in the first degree without recommendation to mercy and was sentenced to be electrocuted, we are inclined to pursue a different course.

There appears to have been no attempt to comply with Rule 103, nor with Special Rule 3, for the government of Circuit Courts. The record contains many pages of photo-

static copies, which violate the rules in that they present the reading matter in white on blank background, while the rule requires that if photostatic copies are used at all they must be in black on white background. Three of what purports to be copies of the writ of error are found in the record. One is with the transcript of the record proper and two in the purported bill of exceptions, neither of which is certified. Much of the suggestion (we cannot call it evidence, because it is not authenticated) of what transpired *in pais* is placed before us in the form of what appears to be copies of some motions, affidavits and exhibits, but they are in no way authenticated or identified so as to be of any value to this Court. What is probably intended to present the bill of exceptions apppears to be the original transcript of the testimony and some of the proceedings had at the trial which was presented to the trial judge to become a bill of exceptions. This document indicates that it is an original document and should be now on file in the office of the Clerk of the Circuit Court of Polk County. This document does not contain the introductory certificate required to authenticate and identify it as a bill of exceptions.

For the reasons stated, the plaintiff in error will be allowed, if he wishes to do so, to withdraw the original records, which should be on file in the office of the Clerk of the Circuit Court of Polk County, and to return the same to the files of that court and within thirty days after the date of the filing of this order to file in this Court an amended transcript of the record prepared in such a manner as to conform to the rules of the Circuit Court and to the rules of this Court pertaining to such matters and, if the same is not done, this cause shall and will at the expiration of sixty days from the date of the filing of this order stand dismissed.

It is so ordered.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, and BROWN, J. J., concur.

PER CURIAM,—Perry Acree was convicted of murder in the first degree and sentenced to death. The crime for which he was indicted was the killing of a police officer of the City of Lakeland on March 27, 1932. Acree, together with one Joseph E. Johnston and his mother, Annie Acree, were jointly charged with the murder of officer W. T. Barnett. In a separate case growing out of the same tragedy, Joseph E. Johnston was convicted of murder in the first degree and sentenced to death for the killing of officer T. A. Nicholson on the same day and at the same time officer W. T. Barnett was killed.

The facts and circumstances of both homicides are set forth in the opinion of this Court filed in the case of Joseph E. Johnston v. State (opinion filed October 3, 1933), where this Court reversed the judgment against Johnston and awarded him a new trial because of the trial court's denial of a motion for change of venue. The same identical point of law, and the same facts and circumstances that were relied on in the Johnston case as grounds for a change of venue, were relied on and shown in this case, save and except the fact that Acree plead not guilty and was tried and found guilty by a jury, whereas Johnston was sentenced on a plea of guilty.

For the reasons given in the opinion in the case of Johnston v. State, *supra,* the judgment in this case is likewise reversed and a new trial awarded, because the trial court's erroneous denial of Acree's motion for change of venue.

Reversed and remanded.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J.J., concur.

BUFORD, J., (concurring specially in judgment) : I concur in the judgment reached by a majority of the Court but not

for the reasons stated in the majority opinion. I do not think the denial of the motion for a change of venue constituted reversible error.

A number of assignments of error are presented which I have considered with the result that I find only one ground upon which I think the judgment should be reversed.

To sustain a judgment of conviction of murder in the first degree every essential element of the crime must be proved beyond every reasonable doubt. Townsend v. State, 95 Fla. 139, 116 Sou. 7.

The existence of a premediatated design entertained by the accused at the time of the act resulting in homicide is an essential element of the crime of murder in the first degree.

If there is sufficient deliberation to form a design to take life and to put that design into execution by destroying life, there is sufficient deliberation to constitute murder in the first degree. Savage v. State, 18 Fla. 909; Blige v. State, 20 Fla. 742, 31 Am. Rep. 628; Ernest v. State, 20 Fla. 383; Newton v. State, 21 Fla. 53.

Premeditation means intent before the act, but not necessarily existing any extended time before the act. Ernest v. State, 20 Fla. 383.

The law does not prescribe what time should elapse between the formation of a design to kill and its execution, to constitute premeditation. It is sufficient if there was a fully formed purpose to kill with enough time for thought, to convince the jury that the mind of the prisoner had become fully conscious of its own design. Carter v. State, 22 Fla. 553; Lovett v. State, 30 Fla. 142; 11 So. 550, 17 L. R. A. 705n; Cook v. State, 46 Fla. 20, 35 So. 665; Keigans v. State, 52 Fla. 57, 41 So. 886.

"An intentional killing may not be murder in the first degree when done in the heat of passion or anger, and fol-

lowing a sufficient provocation so done in time as to raise the presumption that it was the result of sudden impulse, and without premeditation, or when committed under such circumstances as to show that the mind was not fully conscious of its own intentions. Olds v. State, 44 Fla. 452, 33 So. 296."

In Townsend v. State, *supra,* it was said:

"Where a verdict of murder in the first degree is assailed in the appellate court on the ground of the insufficiency of the evinence, facts and circumstances from which the jury could have found all the essential elements of the crime alleged must appear from the evidence contained in the bill of exceptions and incorporated in the duly certified transcript of the record, or a new trial will be granted."

It is well settled that a verdict of guilty must not be based on guess work and suspicion.

As I read the record, it established but little more than a bare inference or ground to suspect that this defendant at any time conceived a design to kill the deceased. The accused and his mother were in an altercation and "scuffle" with two police officers resulting from an effort on the part of the officers to arrest the accused and take him to the city jail because of a breach of the peace alleged to have been committed by him in the presence of the officers. While this was in progress the accused lay down on the ground and his mother got down over him, evidently to obstruct the officers. The officers were trying to get accused up to put him into an automobile when one Johnston came upon the scene and the mother of accused called on Johnston for help. Johnston responded by going into the house of the woman and immediately returning with a pistol. He approached the party from the rear of one of the officers and deliberately shot one of them in the back of the head and fired one other shot which may or may not have hit the

other officer. Accused is not shown to have invited Johnston into the difficulty and is not shown to have had any knowledge that Johnston intended to participate in the difficulty in any way.

When the shots were fired one of the officers fell dead. The other officer ran toward and around the automobile to the opposite side thereof. Johnston and the accused ran toward the same place. There is conflict in the evidence here. One witness says Officer Barnett was ahead; that Johnston followed Barnett with the pistol in his hand and that the accused followed Johnston. Another witness says the accused was ahead; that Officer Barnett was after him and that Johnston followed the officer. Be this as it may, they all agree that Officer Barnett caught the accused on the opposite side of the automobile and there a "tussle" ensued between the officer and the accused and Johnston, and while this was going on Johnston fired another shot toward the officer, apparently shooting from his coat pocket or from the lower part of his coat; then in some way the accused grabbed the pistol and as he jumped back he fired the pistol from about his hip toward Johnston, then turned and ran toward a nearby house where he discharged the remaining two loads from the pistol, shooting once under the porch and once into the air, without apparently intending to injure anyone. Barnett fired his pistol twice at the accused as he ran toward the house and fired another shot into the air as he (Barnett) staggered and fell where he quickly died, but the accused did not return this fire, though he had a loaded pistol in his hand.

Barnett was shot through the upper thigh and the bullet severed the femoral artery. The evidence fails to show that the accused knew at any time during the difficulty whether Johnston was attempting to aid him or to aid the police officers. The evidence does not show that the accused was

in position to see Johnston or the first man killed at the time that shooting occurred or that he knew what had happened at that time until after the difficulty was over. For all the evidence shows to the contrary, the accused may have grabbed the gun away from Johnston, thinking Johnston was shooting at him. When he grabbed the gun and jumped back and fired he was shooting toward Johnston and toward Barnett and the only witness who testified that he was looking at the trio when this occurred testified that when the accused grabbed the pistol he jumped back from the other two and immediately fired without raising the gun, but shooting it from about his hip or waist line. This witness could not see the gun when it was fired but saw the smoke from it. The pistol was hidden from him behind the body of the accused.

There is nothing in the record to show that the accused had any reason to expect Johnston to take up his difficulty. Therefore, whatever intent may have existed in the mind of Johnston could not be visited upon the accused in this case, under this state of the evidence.

Whether Johnston fired the shot which killed Barnett or the accused fired that shot was the question for the jury to determine and from all the facts and circumstances disclosed, they might have logically reached the conclusion that that fatal shot was fired by the accused but I think that under all the circumstances in the case, they were not warranted in reaching the conclusion that the shot was fired from and with a premeditated design to effect the death of any particular individual.

For the reasons stated, I think the judgment should be reversed and the cause remanded for a new trial.