165 So.2d 223 (1964)
Michael Joseph SOLITRO, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 4824.
District Court of Appeal of Florida. Second District.
May 22, 1964.
Rehearing Denied June 22, 1964.
Charles J. Cullom, Orlando, for appellant.
James W. Kynes, Atty. Gen., Tallahassee, and Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
ALLEN, Acting Chief Judge.
The subject matter of this appeal is identical to that of a companion case, Solitro v. State, Case No. 4113, 165 So.2d 225, dismissed this day, and the briefs in the latter are used at the request of counsel for both the State and the defendant in the instant case. Some confusion arises in the statement of facts in appellant's brief in Case No. 4113 to this effect: "The appellant was brought to trial upon an information in four counts. The court during the progress of the trial required the prosecution to elect as between the four counts and the prosecution elected to proceed on count No. 3, to which count the jury returned a verdict of guilty of aggravated assault." Actually, the court reporter's transcript of the trial proceedings shows that the lower court required the State to elect upon which of the counts he would rely. The State elected count No. 2 and the jury verdict found the defendant guilty of a lesser included charge of aggravated assault under count No. 2 of the Information. The trial judge sentenced the defendant on this charge. The same error appears in the transcript of record of Case No. 4824. While the defendant was sentenced to the crime of aggravated assault as had been charged in the Information and the judge adjudged him to be guilty of said crime, he was, in fact, convicted under the second count. We requested the Clerk of the Criminal Court of Record of Orange County to furnish this court with a corrected copy of the sentence which copy shows that Solitro was convicted of aggravated assault.
Linda Joyce Bechtel, formerly Linda Joyce Langan, upon whom the assault was made, was the principal witness for the State. The State attempted to use her *224 companion John Allen Pefley as a witness but he declined to testify because of the fact his testimony might be used to incriminate him. We must, therefore, look to the testimony of Linda Joyce Bechtel to see if there is sufficient evidence to convict the defendant Solitro of aggravated assault. Her testimony, in substance, is as follows:
On or about 3:30 A.M. on the morning of July 14, 1962, Linda Joyce Langan (Bechtel), a cocktail waitress in the Three O'clock Club, emerged from the club into the parking lot. She was in the company of John Pefley. Pefley and John Black, appellant's co-defendant, had apparently argued and exchanged blows earlier that evening. When Miss Langan and Pefley were entering the latter's car, Black challenged Pefley to finish their fight. Appellant Solitro was in the parking lot at that time, apparently already in his car and some little distance from Black. Pefley ignored Black and he and Miss Langan drove out of the lot. As they drove out and proceeded South on highway 441, appellant Solitro also left the parking area, passed Pefley's car and immediately pulled back in front of it, whereupon Pefley's car "bumped" the rear of Solitro's car. Pefley backed up, went around Solitro and proceeded about a half block, then made a U-turn and proceeded North with appellant Solitro in pursuit. About the same time, Black drove from the parking lot and followed them.
Thereafter, and over a distance of about four miles, Solitro followed close behind Pefley's car while Black pulled alongside. Black apparently was "waving" a pistol at the Pefley car.
Pefley again made a U-turn, Solitro remained at his station immediately behind Pefley, while Black, who overshot the turn, rejoined them a bit later. The cars, heedless of traffic signals were proceeding at about 75 m.p.h. with Solitro and Black trying to pass Pefley. Eventually Solitro turned off and was not seen again. Pefley (with Miss Langan) and Black continued to and onto Colonial Drive, Black apparently attempting to force Pefley to the curb. Eventually the two cars collided.
We are convinced that the jury could find that the defendant Solitro was guilty of aggravated assault.
The Florida Supreme Court, in the case of Williamson v. State, 1926, 92 Fla. 980, 111 So. 124, 53 A.L.R. 250, held that an automobile could be so used as to constitute a deadly weapon within the meaning of Section 5061, R.G.S. (1920), defining an aggravated assault. This statute was the predecessor of Fla. Stat. § 784.04, F.S.A. The Court, in its opinion, said:
"It is contended by plaintiff in error that an automobile, not having been designed as a deadly weapon, cannot become such in contemplation of section 5061 of the Revised General Statute. Webster's New International Dictionary defines the word `weapon' as follows:
"`An instrument of offensive or defensive combat; something to fight with; anything used or designed to be used in destroying, defeating, or injuring an enemy, as a gun, a sword, a shield, etc.' (Italics ours.)
"As an automobile is a thing which may be used in destroying or injuring an enemy, it would come within the dictionary definition of a weapon, although it was not designed or constructed for that purpose.
"In the case of Blige v. State, 20 Fla. 742, 51 Am.Rep. 628, this court held that a weapon may be a deadly weapon, although not specially designed for offensive or defensive purposes or for the destruction of life or the infliction of injury. The alleged weapon in that case was a scale weight. In the opinion in that case, a number of cases are reviewed, and it was stated that it will be seen from *225 such cases that a stone, an axe, or a chair may be considered dangerous or deadly weapons, depending entirely upon the proof of the mode and manner of their use. In Pittman v. State, 25 Fla. 648, 6 So. 437, this court defined a deadly weapon as one which is likely to produce death. Bishop on Statutory Crime (3d Ed.) § 320, defines a deadly weapon as:
"`A weapon likely to produce death or great bodily injury. In case of doubt, the manner in which it was used may be taken into account in determining whether or not it was deadly. And when the facts are all established, the question whether a particular weapon was deadly or not is of law for the court; yet practically, as in most instances the establishment of the facts awaits the rendition of the verdict, the jury must pass upon this question under instructions from the court.'"
In a recent case, Goswick v. State, Fla. 1962, 143 So.2d 817, our Supreme Court, in an opinion by Mr. Justice Thornal, said:
"An aggravated assault as defined by the above statute requires only a general intent and not a specific criminal intent. Wharton's Criminal Law and Procedure, Vol. 1, page 716. An aggravated assault may be committed without a battery. The gist of the crime is found in the character of the weapon with which the assault is made. The use of a deadly weapon must be charged and proved. It is the nature of the weapon that characterizes the assault as `aggravated.' Lindsey v. State, 67 Fla. 111, 64 So. 501; Knight v. State, 44 Fla. 94, 32 So. 110. By its decision under review the Court of Appeal appears to have given undue weight to the nature of the attack rather than the nature of the weapon. In aggravated assault the prime consideration is the character of the weapon. That is a jury question. In order to convict an accused of aggravated assault the state must establish that the assault was committed with a deadly weapon. A `deadly weapon' has generally been defined to be one likely to produce death or great bodily injury. Whether or not the weapon involved is to be classed as `deadly' is a factual question to be resolved by the jury under appropriate instructions. Lindsey v. State, 53 Fla. 56, 43 So. 87; Taylor v. State, 49 Fla. 69, 38 So. 380; Wharton Criminal Law and Procedure, Vol. 1, page 721."
We, therefore, affirm the lower court.
Affirmed.
KANNER, (Ret.), J., and DOWNEY, JAMES C., Associate Judge, concur.