JAMES E. STARKE, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT· IN ERROR.

| 49 | 41 |
|----|----|
| f51 | 32 |
| 49 | 41 |
| j52 | 93 |
| 49 | 41 |
| 53 | 432 |
| 55 | 53 |
| 55 | 111 |
| 49 | 41 |
| 60 | 7 |

1. The fact that the record fails to show that the accused was personally present when the names of persons constituting a special venire to try his case were drawn from the jury box and a venire issued therefor, such drawing being had and venire issued in pursuance of a previous order therefor, constitutes no ground for reversing a judgment of conviction in a criminal case.

2. There is no error in sustaining objections to questions propounded to a witness, where there is nothing in the questions themselves, nor in the evidence in the case, showing that the answers would be relevant or pertinent to the issues, and the party does not make an offer of what he proposes to elicit by such· questions in order that the court may judge of its relevancy.

3. Evidence offered by defendant in a criminal trial tending to prove that one summoned by him as a witness had been duly served with subpoena but had failed to appear, is properly excluded.

4. Where the defendant in a trial for murder, to prove insanity, produced witnesses who based their opinions upon abnormalities in his conduct, language and acts observed by them on the day of the homicide and the two preceding days, and many of these abnormalities were very similar to others observed on previous occasions when the witnesses knew defendant was drunk and not insane, but some of the witnesses testified that he had not been drinking for specified periods prior to the homicide, the State, in rebuttal, had a right to prove that defendant was under the influence of intoxicants within those periods, and to prove that his acts, language and conduct on those occasions were similar to those observed by defendant's witnesses immediately prior to the homicide; and the State could also further prove in rebuttal that defendant was drinking and under the influence of intoxicants on the day of the homicide and for several days prior thereto.

5. A witness can not be cross examined as to matters irrelevant or immaterial, and beyond the scope of the direct examination, merely for the purpose of laying the foundation for the introduction of his contradictory statements regarding such matters.

6. If evidence tends to contradict, qualify, limit or explain matters brought out in the testimony produced by the defendant, the other party may properly introduce such evidence in rebuttal, even though a witness for the defendant may have admitted on cross-examination, or may not have denied the existence of the facts sought to be proved by the evidence so offered in rebuttal.

7. Instructions should be confined to the evidence in the case, but an appellate court will not reverse a judgment of conviction for a violation of this rule, if it can say affirmatively from a consideration of the entire record, that the defendant was not and could not have been injured by the error in giving such an instruction.

8. Where no testimony was produced upon a trial at which the defendant was convicted of murder in the second degree from which the jury could with any reason have rendered a verdict for manslaughter, no reversible error was committed by giving an instruction confining the jury to a consideration of defendant's guilt with respect to the crime of murder.

9. All instructions given upon the same subject should be considered together, and when read in connection with each other if no error appears an exception based upon an isolated one will not avail, although standing alone the one excepted to may be ambiguous.

10. Upon a trial where insanity is an issue, an instruction which informs the jury that though they may find that the party was able to and did perform intelligently the duties required of him by his vocation, or in the business in which he was employed, such fact would not be inconsistent or incompatible with an unsound condition of the mind, is properly refused.

11. Instructions may be properly refused where the same propositions are substantially embraced in other instructions given.

12. An instruction, the tendency of which is not to aid, but to confuse a jury, or which requires them to find as true many minute matters specifically in order to reach a certain verdict, many of which matters are comparatively unimportant and might be entirely eliminated without materially affecting the question at issue upon other evidence, is properly refused.

13. The ruling of the trial court upon the testimony produced in support and in denial of a ground in a motion for a new trial alleging that one of the jurors was biased against the accused and had expressed an opinion that he was guilty before the trial, will not be disturbed by an appellate court, where the evidence is conflicting and there is nothing to show an abuse of discretion. Such questions

must necessarily be left largely to the   discretion of the trial judge who may know the witnesses and be able to judge of their credibility.

14.   Evidence examined and found to support the verdict.

This case was decided by Division. A.

Writ of Error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the Court.

*Walter M. Davis, Gibbons & Maxwell* and *John E. Hartridge,* for Plaintiff in Error.

*W. H. Ellis,* Attorney-Geenral, and *Alex. St. Clair-Abrams,* for the State.

CARTER, J.   On November 17, 1903, plaintiff in error was indicted for murder in the Circuit Court of Duval county.   The indictment charged murder in the first degree, but upon the trial had in February, A. D. 1904, defendant was convicted of murder in the second degree, and sentenced to confinement in the State prison for life. From the sentence imposed this writ of error was taken.

A minute entry dated February 1st, 1904, reads as follows:

"The State of Florida        ⎫
        vs.                            ⎬
James E. Starke.             ⎭

The judge of this court this day in the presence of the sheriff and the clerk drew from the jury box the names

of one hundred talesmen, and a venire was issue for the one hundred so drawn, commanding the sheriff to summen each of them to be and·appear before this court at 10.00 A. M. on Monday, February 15th, A. D. 1904, to serve as jurors in the case of the State of Florida against James E. Starke."

The first assignment of error complains that the proceedings mentioned in this entry were had during defendant's absence. There is nothing before us to show that the defendant was in fact absent when the proceedings mentioned were had. The record merely fails to show that he was present. The entry does not purport to show the making of an order for the special venire, but simply that one hundred names were drawn from the jury box and that a venire was issued to the sheriff to summon the persons whose names were so drawn to serve as jurors in the case against the defendant. There is nothing to show that this drawing was not had and venire issued in pursuance of a previous order to that effect. The question presented therefore is this: Must the record show that the defendant was present when the names of persons to constitute a special venire to try his case are drawn from the jury box and a venire issued therefor, where such drawing is had and venire issued in pursuance of a previous order therefor? We are of opinion that this question must be answered in the negative, these matters being ministerial preliminaries merely, and not material "steps" or "stages" in the trial within the meaning of the rules requiring the record to show the defendant's personal presence. 1 Bishop's New Crim. Proc., section 269; Pocket v. State, 5 Tex. App. 552; Cordova v. State, 6 Idem. 207; Hurd v. State, 116 Ala. 440, 22 South. Rep. 993; Stoball v. State, 116 Ala. 454, 23 South. Rep. 162;

Frazier v. State, 116 Ala. 442, 23 South. Rep. 134; Jones v. State, 116 Ala. 468, 23 South. Rep. 135; Milton v. State, 134 Ala. 42, 32 South. Rep. 653.   See, also, Thomas v. State, 47 Fla. . . ., 36 South. Rep. 161.

Whether the record must show the order for the drawing of a special venire, and that defendant was present when it was made, are questions not raised by the assignments of error or argued in this case, and we do not decide them.

The defendant introduced as a witness J. O. LaFontise who testified that about ten minutes after John F. Angel, the deceased, was shot by the defendant, a justice of the peace in witness' presence asked Angel "for a statement and got a little out of him—he got a little from him, but not much." In reply to the question "Did he say anything at all about the affair—how it occurred, etc.?" he answered, "No, not how it occurred.   He just started out with".   Here he was interrupted by counsel for the State, and upon objection interposed the court refused to permit the witness to state what Angel said, and this ruling is assigned as error.   It is argued in support of this assignment that the statement of Angel was admissible either as a dying declaration or as part of the *res gestae*.   The witness testified that the statement had no refernce "to how the affair occurred," and there is nothing in the questions proposed, nor in the testimony of the witness La-Fontise from which the court can see that the statement of Angel was relevant or pertinent to the issues in the case.   In Boykin v. State, 40 Fla. 484, 24 South. Rep. 141, it was held that "it is the duty of a party appealing to an appellate court to make the errors apparent of which he complains, and where in the examination of witnesses on the trial, any of his questions have been excluded on

objection, and such questions do not in and of themselves indicate whether the answers thereto will be material or pertinent evidence or not, it is his duty in order to have the rulings thereon reviewed on appeal to make an offer at the trial of what he proposes to elicit or prove by such questions, so that both the trial and appellate court can determine whether the proposed evidence is material or not, otherwise he fails to make his alleged error to appear and the appellate court will so declare." The same principle controls the present question, consequently the assignment of error is not well taken.

The defendant introduced testimony tending to prove that his appearance, conduct and language were peculiar and unnatural on Tuesday, Wednesday and Thursday (the day of the homicide), and for sometime afterwards; a number of witnesses in his behalf basing their opinion that he was insane upon incidents coming under their personal observation upon the days mentioned. The defendant testified that he went to White Springs to see his wife on Sunday; that while at the latter place he noticed his wife attempting to conceal a letter which she covertly tore in pieces and threw in the slop jar; that he secured the pieces and on his return to Fernandina Monday night put them together and read the letter. The letter was introduced in evidence, and the defense was based upon the theory that this letter caused the defendant to believe that his wife was unfaithful, thereby producing such a mental shock as to destroy his reason, and that the homicide was committed while this mental condition existed. The deceased was the brother of defendant's wife, and the wife was present at the time of the homicide. Presumably she knew all the facts immediately connected with the

homicide, and also her husband's mental condition at the time.

The defendant offered in evidence the subpoena which had been issued for his wife as a witness upon his application to show as was stated at the time that she had been served, but had failed to appear. The court excluded the subpoena on objections by the State and this ruling is assigned as error. This ruling was entirely correct, for the evidence offered was wholly irrelevant. It is argued that as the wife was presumably a very important witness, the court should have permitted defendant to prove his effort to secure her attendance in order to rebut any unfavorable inference which might be drawn against him from her absence. We are not prepared to say that such an inference could properly be drawn, but if so, it would not be rebutted by the proof offered as it did not show that the attendance of the witness could not have been procured by an attachment if she failed to appear after due service.

The State in rebuttal introduced testimony tending to prove that the defendant was under the influence of intoxicants on Tuesday, Wednesday and Thursday, and sought to account for the peculiarities in his manner, conduct and speech on those days in that way. A. V. Baisden, a witness for the State, was permitted to testify that defendant was drinking on Monday night while on his way from White Springs to Fernandina. The defendant objected to this testimony upon the grounds that it was not in rebuttal, and assigns error upon his exception to the ruling admitting it. There was no error here, as the testimony taken in connection with the other testimony

tending to show that the use of intoxicants was continued on Tuesday, Wednesday and Thursday, was proper in rebuttal.

The court permitted the State witness W. S. Whitney to testify in rebuttal that about three weeks prior to the homicide the defendant was under the influence of liquor. Defendant objected to this testimony upon the ground that same was not in rebuttal. The objection was properly overruled, as several of the defendant's witnesses on direct examination had stated that defendant had not been drinking for quite awhile previous to the homicide. Thomas A. Hall, one of defendant's witnesses, testified that he saw defendant on Tuesday morning; that from defendant's appearance then, witness at first thought defendant was drunk; but after talking with defendant awhile he changed his opinion. He said: "What surprised me was that at first I thought he had been drinking, when in fact he had not been drinking for a couple of years, and I was surprised; but after talking with him awhile I decided that he was not drunk, but that he was under some bad mental strain, he was not natural." Harry Hartley, another witness for defendant, tesified that he saw defendant Wednesday evening and night, and also Thursday morning, and also testified to certain peculiaries observed on those occasions. He testified on direct examination: "Q. Was there anything to indicate that he was under the influence of liquor or drunk? A. No sir, I had known that he had not been drinking. Q. In a year? A. Only Coco Cola; he drank cordial, Coco Cola and things like that."

M. J. Williams, another witness for defendant who had known him about four years testified on direct examina-

4 S C

tion that "I never seen him drink in my life, and I've work for him, collecting water rents and things like that."

The court also permitted Henry W. King and Thomas CV. Clark, witnesses for the State, over defendant's objections, to testify in rebuttal that defendant was under the influence of liquor several times within a year prior to the homicide. It is contended that this testimony was not proper in rebuttal, but for reasons just stated we think it was.

The eighth assignment of error complains that "the court erred in refusing to allow counsel for defense to question the witness Henry W. King as to what he testified on a former trial about a visit to the Angel home after Starke had left Fernandina on September 8th, 1903." This witness who was introduced by the State testified that on Tuesday morning, prior to the homicide, the defendant came to his place of business twice early in the morning and that witness then thought defendant was on a spree, as he acted in the same manner as witness had frequently seen him do when on sprees. On cross-examination he stated that he did not see Starke again that day, and that he did not go to Starke's house to see him. The defendant thereupon propounded questions to the witness inquiring whether on a former trial witness did not state that he went to the Angel house, where Starke resided, on the same day, and found the windows open and lights burning. The court sustained objections to the questions, and at a subsequent stage of the examination counsel stated to the court: "We want to note an exception to the court's ruling prohibiting the question being answered by the witness as testified to in the former trial of this case." It is doubtful if this exception is a

sufficient basis for the assignment of error, but treating it as sufficient, we are of opinion that there is no error in the ruling. It is not pretended that the questions were in cross of the direct examination, but it is contended that they were proper as laying the predicate for impeaching the witness by his contradictory statement. We fail to see that the matter inquired about was at all relevant to the issue. Counsel for defendant argues its relevancy upon the theory that if Starke left his house with windows open and lights burning, this fact tended to show that he was insane, and, therefore, the fact was material. But the testimony shows that other persons resided in the house with Starke, and there is nothing to show that he, and not some one else, left it in the condition stated. An effort was made to prove that the other persons who resided there were not at home at the time, but the court excluded the testimony, and no exception was taken to that ruling. Under these circumstances the questions were properly excluded, under the familiar rule that a witness can not be cross-examined as to matters irrelevant or immaterial, and beyond the scope of the direct examination merely for the purpose of laying the foundation for the introduction of his contradictory statements regarding such matters. Myers v. State, 43 Fla. 500, 31 South. Rep. 275.

Charles J. Angel, a witness for the State, testified in rebuttal that he had known defendant several years very intimately, the defendant having married witness' sister; that he saw and talked with defendant on Tuesday night, Wednesday evening and Thursday morning (the day of the homicide); that defendant was at each of these times much under the influence of intoxicating liquor. He detailed the language and conduct of the defendant upon

the occasions mentioned, and also testified that he had seen the defendant intoxicated in April, and the early part of July, prior to the homicide in September. Over the defendant's objections the witness was permitted to testify as to defendant's acts, language and conduct, and to peculiarities manifested on those occasions, not observable when defendant was not under the influence of intoxicating liquor. These peculiarities and the defendant's acts, language and conduct were very similar to peculiarities in manner, and defendant's acts language and conduct on the day of the homicide and the two previous days as observed by the witness, and by witnesses introduced by the defendant in support of his defense of insanity. The objections urged to the introduction of the testimony above mentioned, and in a motion to strike out such testimony, were that it was not proper in rebuttal; that it was not related to the issue, and that the periods covered by the testimony, April and July, were too remote. We think the objections were not well taken, and that the testimony was properly admitted. It tended to sustain the theory of the State that the abnormalities observed by the defendant's witnesses on the day of the homicide and the two previous days were to be attributed to the effects of intoxicating liquors, and not to insanity as contended by the defendant, and was relevant and in rebuttal in connection with other testimony introduced by the State, showing that the defendant was drinking, and that he was under the influence of intoxicants on the day of the homicide and preceding days. The occasions referred to, April and July, were not so remote as to render the testimony inadmissible on that ground.

D. M. Baker, a witness for defendant, testified to a conversation with defendant on Tuesday night before the

homicide, and to certain statements made by defendant that the witness thought were erratic, as well as certain peculiarities of conduct on that occasion. Among other things he said defendant told him he wanted defendant to bid on about forty-five miles of railroad construction that he had arranged to build, and that ought to be graded for a certain named price. Witness thought the price suggested was irrational, being about one-third too high, and that defendant's conversation about building a railroad was erratic because witness was convinced the corporators had not the money to build the road. He admitted to cross-examination that defendant and others had a charter authorizing the construction of the road. In rebuttal, the State over objections of defendant introduced in evidence the railroad charter, showing that defendant was one of the corporators, and also proved by its witness Charles J. Angel that defendant, prior to the date mentioned by Baker had in contemplation the building of the road, and was endeavoring to raise funds for that purpose. It is urged that this testimony was not proper in rebuttal. The mere fact that the defendant's witness on cross-examination admitted the existence of the charter, and did not deny that defendant contemplated building the road and had endeavored to procure the money for that purpose, does not, as contended by defendant, in and of itself render other evidence of such facts inadmissible in rebuttal if in fact such evidence has a tendency to contradict, qualify, limit or explain matters brought out in the testimony offered by the defendant. If the evidence tends to contradict, qualify, limit or explain matters so brought out in the testimony introduced by the defendant, the State may properly introduce such evidence in rebuttal, even though one of the defendant's wit-.

nesses may have admitted, or may not have denied the ex-
istence of the facts sought to be proved, thereby, for the
State can under no rule of evidence be compelled to rely
upon a mere admission made by the defendant's witness
upon cross-examination, or upon his failure to deny a fact,
if such fact tends to explain or contradict another brought
out by the defendant. We think the matters objected to
were proper, and that the facts shown thereby, that a
charter existed, and that defendant prior to the time
testified to by Baker was endeavoring to secure money to
build the road, were admissible in rebuttal as they tended
to prove that though the corporators may have had no
money, yet they had a charter authorizing them to build
the road, and the defendant had not 1 -st hope of securing
money for that purpose. A desirable charter coupled with
diligent efforts on the part of the corporators will often en-
able them to make financial arrangements to build rail-
roads as well as to accomplish other important under-
takings. The testimony tends to explain what might
otherwise be regarded as erratic ideas in the mind of the
defendant when talking with Baker by showing that he
really entertained hopes of building the road, and was
admissible.

The testimony shows without contradiction that the
defendant killed the deceased by shooting him with a pis-
tol, and there is no suggestion in the evidence of any fact
from which an inference might be drawn that the act of
the defendant was justifiable or excusable under the stat-
utes relating to homicide. The defense, and only defense,
suggested by the evidence, is that defendant was insane at
the time the act was committed. Evidence was intro-
duced by him tending to prove that on Monday night be-
fore the homicide he read a letter addressed to his wife
which he had seen her attempt to destroy the day before.

The letter purported to have been written by a man in Fernandina, and its contents it was contended had a tendency to induce the defendant to believe that his wife was unchaste. Abnormal conduct, language and actions on his part were observed all day Tuesday, Wednesday and Thursday (the day of the homicide), which led witnesses produced by him to express the opinion that he was insane. The defendant had been married about nine years. No evidence was introduced tending to show insanity on the part of any of his relatives, nor showing a tendency to insanity on his part. He had been regarded as a very bright and intelligent man, prior to Tuesday before the homicide. The theory of his defense was that he became insane from the mental shock received upon reading the letter referred to, while the State's theory was that the peculiarities and abnormal conduct, language and actions of the defendant were due to the excessive use of intoxicants which were resorted to in consequence of reading the letter. According to the testimony produced by the State, which was uncontradicted, the following facts appear: The defendant on Tuesday night told a brother of his wife about the letter and said he was going to kill the man that wrote it, and his wife also. On the morning of the homicide the defendant and his wife were seen sitting near together in the express office in Jacksonville, talking. They both arose, went to the door then came back and sat down again. A few minutes later Mrs. Starke called her brother, the deceased, and he came through the doors, sat down across defendant's knees and held him, and a slight scuffle between them occurred. Mrs. Starke handed a pistol to a third person whom Angel had called. One witness said on direct examination that Mrs. Starke took the pistol from defendant, but in answer to the

question on cross-examination "Did you see Mrs. Starke take the pistol away from Mr. Starke?" he replied: "I can not say as to that, she was doing something; she handed a pistol to Mr. Humphreys." The parties arose after Mrs. Starke handed the pistol to Humphreys, when defendant struck at Angel, and Angel told him he was a coward. Defendant remarked to Angel "You took it from me, but I will get another one." He then left the express office, went to the office of a pawnbroker, purchased and paid for a pistol, had it loaded, returned to the express office in about ten minutes and shot Angel, killing him. He had earlier in the day purchased from the same pawnbroker another pistol. Under the facts shown by the evidence without contradiction, the killing of Angel was not justifiable or excusable under the statute, and the evidence shows that the killing was perpetrated by an act imminently dangerous to another, evincing a depraved mind regardless of human life. If the defendant was insane he should have been acquitted; but if he was not insane, then he was guilty of murder in the first degree if the act was premeditated, otherwise of murder in the second degree. The jury evidently took the view that defendant was sane, but that he was by reason of drunkenness unable to form a premeditated design, and, therefore, found him guilty of murder in the second degree. If the defendant was sane, there was no testimony from which the jury could lawfully have found him not guilty, or guilty of a less offense than murder in the second degree.

In a charge given by the court the jury were told that if they believe from the evidence beyond a reasonable doubt that the defendant at the time of perpetrating the homicide was capable of understanding the nature and character of his act, and of distinguishing between right and wrong,

and that a few minutes prior to the shooting he had an altercation with his wife; that she called on deceased for assistance; that deceased went to the wife's assistance and prevented the accused from carrying out such purpose, and aided to take the pistol away from him; that the accused struck or attempted to strike the deceased, and threatened to go and get another pistol; that deceased called accused a coward; that accused left the scene of the encounter, went off, procured another pistol and voluntarily returned to the scene of the encounter and shot deceased, and that deceased died from the effect of such shot, then the defendant would be responsible in the eyes of the law, and it would be the duty of the jury to find him guilty.

Another charge informed the jury that a person who is capable of understanding the nature and character of his act, and of distinguishing between right and wrong who is prevented by the interference of another from carry-ing out a threatened purpose to inflict death or great bodily harm upon a third person, and who because of such interference becomes angered, leaves the scene of the interference, secures or obtains a weapon, returns to the scene of the interference and kills the person who had interfered and prevented the commission of another crime, is responsible in the eyes of law and is not justified or excused in killing the person who interfered with and prevented the commission of the other crime. Both these charges were excepted to and are assigned as error. The objections urged are that they assume as true matters not in evidence, and ignore the effect of other facts in evidence. It is argued that the latter of the charges assumes that defendant was prevented by the deceased from carrying out a threatened purpose to inflict death or great bodily harm to another person, and from committing an-

other crime, and that the other assumes that defendant's
wife called upon the deceased to protect her from being
killed or harmed by the defendant, and that the latter
killed the deceased for revenge because he prevented such
purpose being carried out. The latter charge is somewhat
abstract, but we fail to see that either instruction is so
framed as to mislead the jury to the prejudice of the de-
fendant. The charges are evidently based upon the
State's theory of the effect of the evidence. The court
does not tell the jury that such theory is the proper one
to deduce from the evidence. On the contrary, one charge
expressly tells the jury that the facts stated must be sus-
tained by the evidence beyond a reasonable doubt, before
they can be acted upon, and the other merely states that
if certain things are true, the defendant would be crimi-
nally liable. Neither charge states the degree of crime of
which the defendant would be guilty under the circum-
stances stated in the charge, and in finding the degree of
guilt the jury would proceed, not under these charges, but
under other very full instructions given upon that sub-
ject. From the statement of the facts preceding this dis-
cussion it will be seen that the court confined itself to the
evidence and to inferences of fact which might legiti-
mately be drawn from the evidence, but the jury were not
told expressly or impliedly that the evidence was to be
taken as true, nor that the inference must be drawn from
that evidence even if it was believed to be true. Besides
as we have stated the undisputed facts were such that if
the defendant was sane, he was guilty of unlawful homi-
cide of some degree, and there was no theory of the evi-
dence which if defendant was sane, could relieve him from
criminal responsibility. As the question of sanity was
expressly left to the jury by these and other charges, we
can not perceive that defendant could have been injured

by these instructions, even if some of the facts which were mentioned in these instructions not relating to the question of insanity could not be inferred from the other facts clearly shown by the evidence.

In another instruction the jury were told that "even if you believe from the evidence that the defendant in this case was rendered insane from the shock resulting in a real or imaginary belief that his wife had been or was guilty of infidelity with one Thomas Borden, and even if you believe from the evidence that while laboring under such insanity he sought to harm his wife, if you also believe that he was capable of understanding the nature and character of his act and could distinguish between right and wrong, then I charge you that he would have been responsible in the eyes of the law if he had killed his wife, since even if she had been unfaithful he would neither been excused or justified in killing her because of such infidelity." This charge was excepted to and is assigned as error. The objections urged are that the charge as which assumption it is contended is not supported by the sumes that defendant sought to harm or kill his wife, evidence, and that it is paradoxical and tends to confuse the jury, because while it recognizes insanity as a defense, it states to the jury that even though laboring under insanity he might be guilty. The first objection is disposed of by what has been said in discussing preceding charges. The other we deem untenable. The idea conveyed by the language used is that insanity to constitute a defense, must exist to a degree that renders the party incapable of understanding the nature and character of his act, and of distinguishing between right and wrong. Partial insanity, unless it attains that degree, is not a defense to crime. Davis v. State, 44 Fla. 32, 32 South. Rep. 822.

The charge is, however, subject to the same objection as those discussed in the next paragraph, and should not have been given, but the error in giving it is harmless .for reasons stated in the next paragraph.

The court also instructed the jury that in considering the case they had no right to consider whether the wife of the defendant was guilty of infidelity; that adultery on the part of a .woman does not justify or excuse the husband killing such woman or her paramour; that a man who kills his wife or her paramour because of the adultery of his wife, if at the time he commits the act he is able to understand its nature and character and is capable of distinguishing between right and wrong, is guilty of crime and responsible to the law, no matter what condition of rage, frenzy or jealousy his mind may have been in as the result of the discovery of his wife's infidelity, and in the same connection further instructed the jury that in considering the defense of insanity in case of homicide it was their duty to give it a most earnest and thoughtful consideration; that the law does not presume that a 'man is rendered insane by the discovery of his wife's infidelity and it does not vest in the husband the authority to avenge his wrongs by killing either the wife or her paramour. It is argued under assignments of error based upon exceptions to these instructions, that they improperly withdrew from the jury the question whether the wife was in fact unfaithful, and that though abstractly correct in other respects, the instructions were misleading because they ignored the salient points of defendant's case, and were not applicable to the evidence. The letter introduced by the defendant purported to have been written by a party not a witness in the case. The court admitted the letter, not as proof of the wife's infi-

delity in fact, but as proof tending to show an exciting cause for defendant's alleged insanity, and instructed the jury to that effect, no exceptions being taken to such instructions. No effort was made to prove infidelity in fact, but the theory of the defense was that upon reading the letter defendant believed that his wife was unchaste, and that the mental shock produced thereby rendered him insane. There is no proof tending to show that the defendant ever discovered the wife in the act of adultery, or that the defendant had not been in the company of his wife between the time of reading the letter and his interview with her in the express office immediately before the homicide. Under these circumstances it was entirely proper for the court to instruct the jury that they should not consider whether the defendant's wife was guilty of infidelity, for that question was neither an issue nor material to any issue in the case, nor was there any evidence before the jury upon the subject. The instructions so far as they referred to a supposed paramour of the wife, and to the defendant's responsibility criminally had he killed either the wife or the supposed paramour on account of the wife's infidelity, were not relevant to any testimony in the case, neither the wife nor her supposed paramour having been killed by defendant, and they should not have been given. But in view of the fact that the only defense interposed or suggested by the testimony is insanity, and that under the uncontradicted evidence it is clear that defendant was guilty of either murder in the first or second degree, and that there is no testimony whereby the crime could properly be reduced to a lower degree, and that the defense of insanity was properly presented to the jury by the charges, the court feels that it can say affirmatively that the defendant could not have been and was not

injured by the giving of the instructions referred to, and, therefore, the judgment should not be disturbed. Wallace v. State, 41 Fla. 547, 26 South. Rep. 713, 12 Cyc. 930.

In another charge excepted to and assigned as error the jury were told that if by reason of voluntary intoxication the mind of defendant was in such a condition that he could not premediate the killing, he would if not justified or excused be guilty of murder in the second degree. The objection urged to this instruction is that it excludes a verdict for manslaughter. As we have shown there was no testimony tending to show that the crime was manslaughter. On the contrary, all the evidence shows that if the defendant was not insane the homicide would be either murder in the first or second degree. Under these circumstances there is no reversible error in the charge. Thomas v. State, 47 Fla. ..., 36 South. Rep. 161.

Another charge excepted to by being incorporated in the motion for a new trial is assigned as error. By it the jury were told that in considering whether a person accused of crime understood the nature and character of his act, it was their duty to take into consideration his acts and language immediately preceding the commission of the act; that if they believe from the evidence that on the day of the homicide the defendant had a difficulty with the deceased in which a pistol was taken away from him; that he threatened to go and get another; that he did go and get another; that he voluntarily returned to the scene of the former encounter and shot the deceased, thereby killing him, then the jury were authorized in law to consider such tstimony as evidence that the defendant understood the nature and character of his act, and if they further believed from the evidence that the defendant was a man of intelligence and that he knew it was wrong

to take the life of deceased and further believed from the evidence that the deceased did no act which would justify or excuse the accused in killing him, then the accused is responsible in law for his death. The objection urged to this charge is that it is so framed as to impress the jury with the idea that the facts enumerated if believed by them imperatively required a verdict that defendant was sane. The charge does not express that idea. It does inform the jury that testimony as to certain enumerated matters if believed to be true, may be considered as evidence that defendant understood the nature and character of the act, but this proposition is coupled with two others, *vis*: that the jury must further believe from the evidence that defendant was a man of intelligence, and that he knew it was wrong to take the life of the deceased, all of which must be found by the jury before they could find him criminally responsible. The charge does not confine the jury to the particular facts enumerated therein in determining the defendant's mental condition, but requires them to believe from the evidence (which means the whole evidence) that defendant was intelligent and knew his act was wrong, before holding him criminally responsible. But if there is any ambiguity in the charge in this respect when standing alone, none appears when it is read in connection with other instructions upon the same subject in which the jury were told with great particularity, that the evidence must show beyond a reasonable doubt that defendant was sane when he committed the act, and that in determining the question of sanity or insanity it was their duty to consider all those facts and circumstances given in evidence which would enable them to determine the mental condition of the accused, and that in passing upon the question the jury had a right to take into consid-

eration all the facts and circumstances admitted in evi-
dence which would tend to impair or destroy mental ca-
pacity on the part of the accused at the time the homicide
was committed.

The court refused instructions requested by the de-
fendant to the effect that though they might find that the
defendant was able and did perform intelligently the du-
ties required of him by his vocation, or in the business in
which he was employed, such fact would not be incon-
sistent or incompatible with an unsound condition of the
mind. The charges were properly refused. The facts
stated in the charges may not be, and perhaps are not
conclusive evidence of a sound mind, but they do tend
to prove mental responsibility, otherwise they could not
properly be admitted in evidence when offered as proof of
that fact. The jury are the judges as to whether such
facts are inconsistent or incompatible with the idea of an
unsound mind, as that is a question relating to the weight
of evidence, and the court does right in refusing to charge
as a matter of law to the effect requested.

Exception was taken to the refusal of the twenty-first
charge requested by the defendant. The propositions
covered by the refused instruction were fully embraced
in charge No. 12, given at the request of the State, and
charges Nos. 32, 33, 36 and 37 given at defendant's re-
quest, consequently the court committed no error in the
ruling here complained of.

The last charge requested by defendant and refused by
the court covers nearly six typewritten pages. The
charge contains all the matters stated in a hypothetical
question propounded by the defendant to his expert wit-
ness on the question of insanity, prefaced by the state-
ment "Gentlemen of the jury, if from the evidence in this

case you believe that" and concluding "and if you further believe from the evidence that, under such a state of facts, the said James E. Starke was insane at the time he fired the fatal shot which resulted in the death of John F. Angel, or if such evidence considered as a whole, raises in your mind a reasonable doubt as to the sanity or insanity of the said James E. Starke at the time he fired the fatal shot, then under your oath, it will be your duty to find the defendant not guilty." We see no error in the refusal of this charge. Instead of aiding the jury, its tendency is to confuse. As framed it required the jury to find as true every matter stated in the hypothetical question, and in addition to further find from the whole evidence either that defendant was insane or a reasonable doubt of his sanity, in order to acquit him. The charge requires the jury to find many minute matters specifically in order to reach a verdict of not guilty, whereas quite a number of those matters being comparatively unimportant might have been eliminated without materially affecting the question of sanity upon the whole evidence. The charge does not assert that the facts stated will in law produce a certain result, but merely that those facts must be supplemented by other facts from the whole evidence sufficient to create a reasonable doubt as to sanity or to convince the jurors that the defendant was insane. The charge does not set forth the whole evidence in the case, only that embraced in the hypothetical question propounded to the expert witness. We think the charges given by the court fully presented the law relating to the defense interposed by the defendant, and that the requested instruction was properly refused for that reason as well as for the reasons already stated.

5 S C

The seventh and eighth grounds of the motion for a new trial assert that one of the jurors, Charles Ellis, prior to the trial had heard all the facts of the case detailed by one of defendant's witnesses, Clem L. Decker, and had stated that if he had been a member of the jury on a former trial of the case he would have hung the defendant. In support of these grounds of the motion two affidavits were filed on behalf of defendant. One was made by Clem L. Decker, a strong sympathizer with defendant, who had taken a great deal of interest in his behalf, and who had testified as a witness for defendant at the trial. He states that at the time he testified as a witness he was struck with astonishment to find that Ellis was a member of the jury, but that he did not tell defendant or his counsel that he had heard Ellis make the statement attributed to him in the motion until after the verdict for the reason that "he had no opportunity to do so, or it did not occur to him to do so." The other affidavit was from a person who worked in the same barber shop with Decker, who claimed to have heard the conversation between Decker and Ellis. The State filed the affidavit of the juror positively denying the statements attributed to him, and asserting positively that he was absolutely without bias or prejudice against defendant. He was also personally examined before the court regarding the matters asserted in the motion. In Yates v. State, 26 Fla. 484, text 500-501, 7 South. Rep. 880, this court said speaking of a similar question: "When the evidence is conflicting the verdict will not be set aside unless manifest injury has been done the accused, which is not shown in the case at bar. Such questions as this must necessarily be left largely to the discretion of the trial judge who may know the witnesses and be able to judge

of their credibility." In this case the court permitted a full examination of all the facts connected with the alleged bias on the part of the juror Ellis, and after hearing all the testimony refused to set aside the verdict. There is nothing to show that his discretion was abused, or that he erred in placing credence in the testimony of the juror, rather than in the affidavits produced by the defendant.

The only other ground of the motion for a new trial argued in this court relates to the sufficiency of the evidence to sustain the verdict. The evidence has been carefully examined and the court is of opinion that it is sufficient to support the verdict.

This disposes of all the assignments of error that have been argued, and finding no reversible error the judgment will be affirmed.

WHITFIELD, C. J., and SHACKLEFORD, J., concur.

TAYLOR, P. J., and HOCKER and COCKRELL, JJ., concur in the opinion.