Keigans v. The State of Florida—Syllabus.

———

DOW B. KEIGANS, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The trial judge should not single out and give undue prominence to the testimony of the defendant and the fact of his interest in the result of the trial by instructing the jury to remember "the interest he necessarily must have in the result of the trial," in considering the testimony of the defendant who has testified as a witness in his own behalf.

2. In a trial for murder in the first degree the trial judge

gave the following charge to the jury: "The premeditated design to kill may have existed in the mind of the slayer for a month, a week, a day or an hour, or may have been formed a moment before the fatal shot was fired. If you believe from the evidence that the defendant shot and killed Hansel Norman as charged in the indictment, that he killed him without legal justification, or excuse, and that at the time he fired the shot which killed Hansel Norman, he intended to kill him, it would make no difference at what precise time he made up his mind to take Norman's life. If, when he fired the pistol he intended to kill, he is guilty of murder in the first degree, even although he may not have had in his mind any such intention at the time he drew his pistol."

In the opinion of TAYLOR, P. J. and Justices HOCKER and PARKHILL this charge is erroneous and misleading in a definition of murder in the first degree. SHACKLEFORD, C. J. and Justices COCKRELL and WHITFIELD not concurring. The question presented by this charge is, therefore, not decided.

3. Under Revised Statutes, 2383, it is proper for the trial judge to instruct the jury as to the form of the verdict in case of conviction, directing them to specify in the verdict the degree of unlawful homicide of which they may find the defendant to be guilty.

This case was decided by Division B.

Writ of error to the Circuit Court for Pasco County.

The facts in the case are stated in the opinion of the Court.

*J. A. Hendly, G. W. Dayton* and *Samuel Fletcher*, for Plaintiff in Error;

*W. H. Ellis*, Attorney General; *H. S. Phillips* and *Thomas Palmer*, for the State.

PARKHILL, J. The plaintiff in error was indicted in the Circuit Court of Pasco County for the murder of Hansel Norman, was tried and convicted of murder in the first degree, and from the sentence of death imposed by the Court, seeks relief here by writ of error.

1. The following charge given by the Court to the jury and duly excepted to, is assigned as error: "The jury are the sole judges of the evidence and of the weight and sufficiency of the evidence. It is your peculiar province to determine which of the witnesses or what portions of their testimony you will believe; and which, if any, you will not believe. If there are conflicts in the testimony, you should reconcile them, if in your power to do so. But if you find yourselves unable to reconcile such conflicts, then it will become your duty to entirely discard from consideration such portions of the testimony as you may not believe, and to base your verdict solely upon the part of it which you believe to be the truth, bearing in mind the interest in the result of the trial, if any, which may induce any given witness to falsify or color his evidence. You should treat the testimony of the defendant as you do that of any other witness, and that is, give it just such weight as you think it entitled to, *remembering the interest he necessarily must have in the result of the trial.*"

The last clause of the last sentence of this charge is objectionable because it singles out and gives undue prominence to the testimony of the defendant, and the fact of his interest in the result of the trial. It is calculated to unduly impress the minds of the jury and prejudice the defendant. The direction here is mandatory that the jury

remember the interest the defendant *necessarily must* have in the result of the trial.

Immediately preceding the sentence under consideration, the Court instructed the jury in weighing the testimony of witnesses to bear in mind "the interest in the result of the trial, *if any,* which may induce any given witness to falsify or color his evidence." The juxtaposition of the sentences and the difference in their phraseology would naturally lead the jury to understand that the one clause was mandatory, and the other only permissive; that so far as the defendant was concerned, he *necessarily must* have an interest in the result of the trial, which the jury must remember in considering his testimony; and that, in considering the testimony of the other witnesses in the case, the jury will determine whether a witness has an interest in the result of the trial, and, if so, to bear in mind the interest which *may induce* him to falsify or color his evidence. This charge does not place the defendant in precisely the same attitude with reference to the case, as other witnesses are placed, although the court told the jury that they should treat the testimony of the defendant as they would that of any other witness. It is doubtless true that the defendant necessarily must have an interest in the result of the trial, but as was said in Hicks v. United States, 150 U. S. 442, Sup. Ct. Rep. 144, "it must be remembered that men may testify truthfully, although their lives hang in the balance, and that the law, in its wisdom, has provided that the accused shall have the right to testify in his own behalf. Such a privilege would be a vain one if the judge, to whose lightest word the jury, properly enough, give a great weight, should intimate that the dreadful condition in which the accussed finds himself should deprive his testimony of probability."

Chapter 4400, Acts of 1895, makes a defendant at his option a competent witness. It confers upon him a substatial right and benefit. Under its provisions, he has the right to submit his testimony to the jury and have them judge of his credibility.

Section 1088, Revised Statutes of 1892, provides that the judge presiding shall charge the jury only upon the law of the case. To tell the jury about the interest a man necessarily must have when he is on trial for his life neutralizes or impairs the legislative act that makes him a witness. Green v. State, 40 Fla. 191, Text 199, 23 South. Rep. 851; Lang v. State, 42 Fla. 595, Text 601, 28 South. Rep. 856; Hampton v. State, 50 Fla. 55, 39 South. Rep. 421; Buckley v. State, 62 Miss. 705; Woods v. State, 67 Miss. 575, 7 South. Rep. 495; Muely v. State, 31 Tex. Cr. Rep. 155, Tex. Cr. Rep. 155, Text 168-9, 18 S. W. Rep. 411; 19 S. W. Rep. 915; Harrell v. State, 37 Tex. Cr. Rep. 612, 40 S. W. Rep. 799; Purdy v. People, 140 Ill. 46, 29 N. E. Rep. 700. See, also, Barber v. State, 13 Fla. 675, Text 681; Miller v State. 15 Fla. 577, Text 584; Andrews v. State, 21 Fla. 598, Text 610. A contrary doctrine is held by the courts in some States of our Union, under statutes materially different from the statutes of this State on the subject. Muely v. State, *supra.*

II. It is assigned as error that the Court erred in charging the jury as follows: 4a. "The premeditated design to kill may have existed in the mind of the slayer for a month, a week, a day or an hour, or may have been formed a moment before the fatal shot was fired. If you believe, from the evidence, that the defendant shot and killed Hansel Norman as charged in the indictment, that he killed him without legal justification, or excuse, and that at the time he fired the shot which killed Hansel Norman, he

intended to kill him, it would make no difference at what precise time he made up his mind to take Norman's life. If, when he fired the pistol, he intended to kill, he is guilty of murder in the first degree, even although he may not have had in his mind any such intention at the time he drew his pistol."

This charge is erroneous and misleading. We do not think it conforms to the definition of murder in the first degree under our statute. "The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed, or any human being," is declared, by Section 2380, Revised Statutes, to be murder in the first degree. Manslaughter is "the killing of a human being by the act, procurement or culpable negligence of another in cases where such killing shall not be justifiable or excusable, nor murder according to the provisions of this article." Sec. 2384, Rev. Stats. of 1892.

In manslaughter, there may be an intent to kill existing in the mind of the slayer at the time the fatal shot is fired. In order to constitute murder in the first degree, there must be not only an intention to kill on the part of the slayer, but there must be a premeditated design to kill or effect death also. This charge does not distinguish in this respect between manslaughter and murder in the first degree. It permits the jury to find the defendant guilty of murder in the first degree, if, *when he fired* the fatal shot he *intended to kill* the deceased, without requiring the defendant to have formed and acted in pursuance of such a design as the law would know as premeditated. While the first sentence of the charge states that "the premeditated, design to kill *may have* existed in the mind of the slayer for a month, week, a day or an hour, or *may* have been formed a *moment before* the fatal shot was fired," without

saying that the action of the slayer must be the result of such premeditation, it goes a step further in whittling away and shortening the time within which the defendant must have formed a premeditated design to kill the deceased; and, by saying that it would make no difference at what precise time he made up his mind to take Norman's life, if *at the time* he *fired* the fatal shot he intended to kill him he is guilty of murder in the first degree, the charge does away entirely with the requirement of the law "that there must be such an interval of time between the *intent* and the *act* as will repel the presumption that it was done upon a sudden impulse conceived and executed almost in-stantaneously." Carter v. State, 22 Fla. 553, Text 559. This charge loses sight of the difference between premedi-tated design to effect death, which is essential to the crime of murder in the first degree, and an intention to kill, which may exist in manslaughter, and permits the de-fendant to be convicted of murder in the first degree upon proof of what might be termed instantaneous or flashlight premeditation. As was said by this Court, 8th headnote, all the justices concurring, in Cook v. State, 46 Fla. 20. 35 South. Rep. 665, "there may in contemplation of law, be an intention to kill a human being, which may not amount to a premeditated design to kill, shooting a man inten-tionally and killing him is not necessarily the same as do-ing so with a premeditated design to kill. There may be an intention to kill without its having been premeditated. In order to convict the defendant of murder in the first degree the jury must be satisfied from the evidence beyond a reasonable doubt that the defendant not only had an in-tention to kill the deceased, but that he *actually* had a *pre-meditated design* to kill him." See also Gardner v. State, 28 Fla. 113, 9 South. Rep. 835, S. C. 29 Am. St. Rep. 232;

Olds v. State, 44 Fla. 452, 33 South. Rep. 296. Or as it was expressed by this court in Lovett v. State, 30 Fla. 142, 11 South. Rep. 550, "there must have been, *previous to the act of killing, deliberation* by the slayer upon the question of killing the deceased, resulting in a *distinct determination* or well founded design to kill." It will not do to say that the first sentence of the charge *assumes* that a premeditated design is an essential element of murder in the first degree. Neither will it do to say that the words "as charged in the indictment," used in this instruction, refer to the indictment in its entirety and thereby sufficiently charges that the killing was perpetrated from a premeditated design to effect the death of the deceased, where the trial judge, as he does in this case, does not stop with the expression "as charged in the indictment," but goes on in the charge to erroneously enumerate and state the elements of murder as charged in the indictment to be "that he killed him without justification or excuse, and that at the time he fired the shot which killed Hansel Norman he intended to kill him," etc., and thereby erroneously defined the essential element of murder in the first degree, to wit: The premeditated design to effect death.

We cannot explain away the expression in the instruction "and that at the time he fired the shot which killed Hansel Norman he intended to kill him," by saying that it was unnecessary. This expression was harmful to the defendant, because it entirely changed the charge in the indictment from one of murder in the first degree to manslaughter, it substituted for the element of *premeditated design* charged in the indictment, the element of *intent to kill,* and yet the instruction called for a verdict of murder in the first degree.

The error in this charge followed naturally from a preceding charge given by the trial court as follows: "Pre-

meditated design means an intent to kill, design means intent, and both words imply premeditation." In giving the charge last quoted, the trial judge followed literally the utterance of this Court in Ernest v. State, 20 Fla. 383, Since that time this question was considered here in Cook v. State, *supra*. The court, however, was equally divided, and the question presented by this charge was not decided. Undoubtedly design means intent. Premeditated design, therefore, means premeditated intent. Premeditation is composed of "pre" and "meditation," and means the act of premeditating; previous deliberation; forethought. In Lovett v. State, *supra*, the words are used as synonyms. "Premeditated" implies an interval, however short, between the formation of the intent or design and the commission of the act. Standard Dictionary. As was said by the Court of Appeals of New York: "Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection or consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. The human mind acts with celerity which it is sometimes impossible to measure." People v. Majone, 91 N. Y. 211; People v. Decker, 157 N. Y. 186, 51 N. E. Rep. 1018. See. also Lovett v. State, *supra;* Savage v. State, *supra;* Carter v. State, *supra*. The question of premeditation is one of fact for the jury, and whether a premeditated design to kill was formed must be determined from all the circumstances of the case. Carter v. State, *supra;* Hicks v. State, 25 Fla. 535, 6 South. Rep. 441; Lovett v. State, *supra;* Blige v. State, 20 Fla. 742; People v. Majone, *supra;* People v. Decker, *supra;* Adams v. State, 28 Fla. 511, 10 South. Rep. 106. From what has been said, therefore, we think that a

5—S. C.

charge in the following language will give the jury a fair definition of murder in the first degree under our statute: (In order that the defendant be found guilty of murder in the first degree the evidence must show, beyond a reasonable doubt, that he *unlawfully killed* Hansel Norman by shooting him as charged from a premeditated design to effect Hansel Norman's death. There must not only be an *intention to kill,* but there must also be a premeditated intention or design to kill. Design means intent and premeditated means meditated or thought upon beforehand. Such design must precede the killing by some appreciable space of time; but the time need not be long. It must be sufficient for some reflection or consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. The human mind acts with celerity which it is sometimes impossible to measure, and whether a premeditated design to kill was formed must be determined by the jury from all the circumstances of the case. If the evidence convinces the jury *beyond a reasonable doubt* that the defendant *unlawfully killed* Hansel Normal by shooting him as charged from such a *premeditated design* as already defined the jury will find the defendant guilty of murder in the first degree).

The above discussion and conclusions with reference to the charge of the Court below marked 4a has the unanimous approval of the three members of the Court comprising Division B, but as it is not concurred in by the three members of the Court comprising Division A, the question presented by such charge is not now decided.

III. Exception is taken to the following charge given by the Court: "If the jury should find the defendant guilty, they must in their verdict set forth the distinct degree of homicide, of which they find him guilty, viz:

they must say whether they find him guilty of murder in the first degree, or murder in the second degree, or of murder in the third degree, or manslaughter, and the form of the verdict should be in the following or like form: 'We, the jury, find Dow B. Keigan, the defendant, guilty of,' etc. (Here filling in the degree of the crime). If you find him not guilty, you will say: 'We, the jury, find the defendant not guilty.'" There was no error here. The Court was only instructing the jury to comply with Section 2383 of the Revised Statutes of 1892, as follows: "When the jury find the defendant guilty under an indictment for murder, they shall ascertain by their verdict the degree of unlawful homicide of which he is guilty." It would have been better form to have used the words *"unlawful* homicide," instead of simply the word "homicide," in the charge given; but there is nothing at all in the contention made here by counsel for plaintiff in error that "in this charge the Court has failed to give the exceptions mentioned in the Statute where killing is declared to be justified or excusable, and assumes that it is murder in the first, second or third degree, or manslaughter, and the charge further assumes that there was no evidence other than to prove the material facts to constitute murder in the first, second or third degree or manslaughter, and further than this, the jury could not go, that it was one of the crimes set forth above." It is perfectly plain that if the defendant is guilty of any crime known to the law, it must be one of the crimes mentioned by the Court in this charge.

As this case must be reversed because of the errors already noted, we deem it unnecessary to notice other assignments of error. It may be well, however, to say that under the circumstances of this case, we think the testimony of the witness, John A. Nelson, to the effect that shortly before the death of Norman the defendant said he

would kill any white man who interfered with him while he was whipping a negro was permissible, as this testimony tended to disclose a motive for the homicide.

There are copied into the transcript many charges numbered from 15 to 44, both inclusive, that are not signed by the judge or endorsed as having been given or refused, nor ordered to be filed, neither are they contained in the bill of exceptions. These charges are, therefore, not so authenticated as that they can properly be considered by an appellate court. We do not know, therefore, whether they were in fact given to the jury or not, but as there will have to be another trial of the cause, we do not wish to be considered as having sanctioned such charges by our silence. Several of them are in conflict with the views herein expressed, and others of them infringe upon other rules of law and other decisions of this court. The entire charges in the case should be recast and made to conform to the law as herein expressed.

For the errors found the judgment of the Circuit Court in this cause is reversed at the cost of Pasco County, and a new trial awarded.

TAYLOR *and* HOCKER, JJ., concur in the opinion;

WHITFIELD, J., concurs in the reversal; and,

SHACKLEFORD, C. J., and COCKRELL, J., dissent.

WHITFIELD, J. (*concurring in the reversal*) :

In disposing of the assignment of error considered in subdivision numbered II of the opinion it does not appear to be necessary to overrule any former decisions of this

court, and I do not concur in that subdivision of the opinion.

The error assigned is the giving of the following charge: "The premeditated design to kill may have existed in the mind of the slayer a month, a week, a day or an hour, or may have been formed a moment before the fatal shot was fired. If you believe from the evidence that the defendant shot and killed Hansel Norman as charged in the indictment, that he killed him without legal justification, or excuse, and that at the time he fired the shot which killed Hansel Norman, he intended to kill him, it would make no difference at what precise time he made up his mind to take Norman's life. If when he fired the pistol he intended to kill he is guilty of murder in the first degree, even although he may not have had in his mind any such intention at the time he drew the pistol."

The first sentence of the charge assumes that a premeditated design is an essential element of murder in the first degree, and states that it may *have existed* in the mind of the defendant for a month, a week, a day or an hour or may *have been formed* a moment *before* the fatal shot was fired. This proposition does not appear to be erroneous and it is in accordance with decisions of this court. See Carter v. State, 22 Fla. 553; Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Olds v. State. 44 Fla. 452, 33 South. Rep. 296.

The second sentence of the charge in effect is, that if the jury believe from the evidence that the defendant shot and killed the deceased, *as charged in the indictment,* without legal justification or excuse, *and* that at the time the defendant fired the shot which killed the deceased, the defendant intended to kill the deceased, it would make no difference at what precise time *he made up his mind to kill deceased.* In Clifton v. State, 26 Fla., 523, 7 South.

Rep. 863, where the words "as charged in the indictment" were used in a charge given, this Court held that "the charge referred to the indictment in its entirety, including of course" the allegation of the offense, "and consequently the charge was not defective" in failing to state an element of the offense. In this case the indictment is for murder in the first degree, and of course it charges the killing to have been done *unlawfully* and *from a premeditated design to effect the death of* the deceased. This being so, these words are to be taken as constituting a part of the charge of the Court, and the charge should be so construed. The additional expression, *"and* at the time he fired the shot which killed Hansel Norman, he intended to kill him," was unnecessary; but it cannot be harmful to the defendant as the word "intended" means "designed," and the phrase last above quoted is immediately followed by the expression "it would make no difference at what precise time *he made up his mind to take Norman's life,"* which necessarily means that there must have been premeditation on the subject of killing the deceased, and the formation of a design to kill him, before he fired the fatal shot. Thus read, the second sentence of the charge, when considered in connection with the first sentence stating that the premeditation may have existed in the mind of the slayer an hour or longer, or *may have been formed a moment before* the fatal shot was fired, is not in my judgment erroneous.

The third sentence of the charge is: "If when he fired the pistol he intended to kill he is guilty of murder in the first degree, even although he may not have had in his mind any such intention at the time he drew his pistol."

When taken in connection with the first sentence of the charge stating that the premeditated design to kill *may have existed* in the mind of the slayer for an hour or more,

or *may have been formed* a moment *before* the fatal shot was fired, and considered with the second sentence of the charge that if the jury believe the defendant killed the deceased *as charged in the indictment,* without legal justification or excuse, and that at the time defendant fired the shot which killed deceased, he intended to kill him, it would make no difference at what precise time *he made up his mind to kill him,* the third sentence of the charge can not be said to be error, at least when the opinion does not contain any of the testimony as to the length of time between the drawing of the pistol and the firing of it at the deceased, unless this sentence is a charge upon the facts.

The other subdivisions of the opinion are concurred in.

SHACKLEFORD, C. J. (*dissenting*) : I regret exceedingly that I am unable to concur in the opinion which has been prepared in this case by Mr. Justice PARKHILL and in which Presiding Justice TAYLOR and Mr. Justice HOCKER have concurred. Actuated by a conscientious desire to reach a like conclusion with them if possible and wishing to have the benefit of all the light which could be shed upon the matters discussed in the opinion, I have availed myself of the privilege conferred by Section 2 of Chapter 5124, Laws of 1903, and have procured the record, assignment of errors and briefs of the respective counsel, and subjected them to a careful examination.

Right at the threshold I find myself confronted with the serious question as to whether or not any of the charges or instructions of the Court which are discussed in the opinion are before us for consideration.

Before proceeding to discuss this question I wish to call attention to the imperfect manner in which the transcript of the record is prepared, though I shall not take the time to point out the various defects and irregularities appar-

ent therein. As to the importance of having the record properly prepared and the duty counsel owe clients as well as the court in this respect, see State v. Madoil, 12 Fla. 151, text 155; Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 39 South. Rep. 392, and authorities therein cited; Akin v. Morgan, 50 Fla. 172, 39 South. Rep. 534; Porter v. Ewing, 51 Fla. 265, 39 South. Rep. 993.

I find that the bill of exceptions does not set forth any of the charges or instructions, either those given by the Court of its own motion or at the request of counsel. Neither does it contain any of the instructions which were requested by counsel and refused. The only reference found in the bill of exceptions to charges either given or refused is in the motion for a new trial. This is not sufficient to bring any of the charges before us for consideration. See Broward v. State, 9 Fla., 422, text 424; Mountain v. Roche, 13 Fla., 581; Dukes v. State, 14 Fla., 499; McNealy v. State, 17 Fla., 198; Livingston v. L'Engle, 22 Fla., 427; Stearns v. Jaudon, 27 Fla., 469, 8 South. Rep., 640; Parris v. Pensacola & A. R. Co., 28 Fla., 251, text 277; 9 South. Rep. 696; Richardson v. State, 28 Fla., 349, 9 South. Rep. 704; Pinson v. State, 28 Fla., 735; 9 South. Rep. 706; McSwain v. Howell, 29 Fla., 248, 10 South. Rep. 588; American Lead Pencil Co. v. Wolfe, 30 Fla., 360, 11 South. Rep. 488; Garner v. State, 31 Fla., 170, 12 South. Rep. 638; Watrous v. Morrison, 33 Fla., 261, 14 South. Rep. 805, S. C. 39 Amer. St. Rep. 139; Lovett v. State, 33 Fla. 389, 14 South. Rep. 837; Freeman v. State, 50 Fla., 38, 39 South. Rep. 785. I would call especial attention to the full discussion of the office performed by a motion for a new trial in Richardson v. State, 28 Fla., 349 text 354 *et seq.*, 9 South. Rep. 704, and would commend the following language found on page 355:

"Statements in motions for new trials have never been regarded by this court as evidence or proof of the truth of the facts asserted therein either expressly or by implication, when the motion has been overruled. In such cases the presumption of appellate courts, in the absence of affirmative evidence in the record supporting the statement, is that the motion was overruled by the lower court because the statements were not true; and this as well as to charging juries as to other matters." This language is strikingly applicable here, as in his order overruling the motion for a new trial the Circuit Judge states that "some of the matters set forth in the motion are not founded on the facts," specifying some of them, and further stating therein that "all of the charges of the court are not embraced in the motion."

Immediately after the signature of the judge to the bill of exceptions follows in the transcript what purports to be the charge given by the judge to the jury, the prefatory statement thereto reading as follows: "And the said Judge, the parties having concluded to submit their testimony and the several matters and things aforesaid, did then and there deliver his charge to the jury as follows:" Then something over three typewritten pages are set forth containing numbered sections or paragraphs from 1 to 14 inclusive. After the paragraph marked 7 appears the following: "8, 9, 10, 11. Charges Nos. 8, 9, 10, 11 were not given by the trial court. O. L. Dayton, Clerk," and at the close of paragraph 14, as though intended to form a part thereof, is the following language: "Signed, filed and made a part of the record in the cause this 20th day of October, A. D. 1905. J. B. Wall, Circuit Judge." Then immediately after this signature appear other paragraphs numbered from 15 to 44

inclusive, embracing between six and seven typewritten pages, but nowhere does it appear whether they were given or refused. They are not identified in any way and we cannot tell for what purpose they were transcribed into the record. They are not marked, signed or filed, and we are not informed whether they formed part of the charge given by the judge of his own motion or were charges requested by the State or defendant. The motion for a new trial copies some of these charges numbered from 15 to 44 and recites therein that they were given and excepted to, but, as we have already seen, this statement is no evidence of the truth thereof, especially not in view of the written statement made by the judge in his order overruling the motion for a new trial. Nowhere from the beginning to the end of those charges or instructions, from No. 1 to No. 44, do we find any exceptions noted. Just after No. 44 appears the following words: "Charges for Deft.," after which are set forth certain instructions which are marked, given and signed by the judge. Then come certain other instructions requested by the defendant, which are marked refused, an exception noted and are signed by the judge.

"The general rule is that in order to review a charge in this Court upon the ground that it is not law, there must be an exception to it." Southern Express Company v. VanMeter, 17 Fla. 783, text 795. To the same effect see Coker and Scheiffer v. Hayes, 16 Fla. 368, text 378; Godwin v. Bryan, 16 Fla. 396, text 399; Reid, Story and Sullivan v. State, 16 Fla. 564; Potsdamer v. State, 17 Fla. 895; Phillips v. State, 28 Fla. 77, 9 South. Rep. 826; McSwain v. Howell, 29 Fla. 248, text 253, 10 South. Rep. 588; Williams v. State, 32 Fla. 251, 13 South. Rep. 429; Williams v. LaPenotiere, 32 Fla. 491, 14 South. Rep. 157;

McCoy v. State, 40 Fla. 494, 24 South. Rep. 485; Pittman
v. State, 45 Fla. 91, 34 South. Rep. 88; Bynum v. State,
46 Fla. 142, 35 South. Rep. 65; Parnell v. State, 47 Fla.
90, 36 South. Rep. 165. As was well said in Pittman v.
State, supra, "the long-settled rule here is that charges
not excepted to in the court below cannot be assigned
as error or considered in an appellate court." Also see
other authorities cited therein.

Unless, then, exceptions to the charges complained of
are clearly made to appear to us we cannot consider the
assignments based thereon.

Although it is not so stated in the opinion prepared
by Mr. Justice Parkhill, it is contended that the charges
treated in the opinion and which are declared therein to
be erroneous, for which errors the judgment must be
reversed, constitute or form part of a statutory or spec-
ial bill of exceptions and that, having been excepted to
in the motion for a new trial, they are properly before
us for consideration. Is this position tenable? I think
not and will proceed to set forth the reasons which impel
me to this conclusion.

Prior to the enactment of Chapter 2096 Laws of 1877,
Section 8 of Chapter 138 of the act of January 4, 1848,
regulated the giving of instructions in criminal cases
and prescribed the duty of the judge in regard thereto,
while Chapter 140 of the act of January 3, 1848, per-
formed a like office in civil cases. Both section 8 of Chap-
ter 138 and the entire Chapter 140 were repealed by
Chapter 2096 Laws of 1877. See Southern Express Com-
pany v. VanMeter, 17 Fla. 783, text 793, et seq., 35 Amer.
Rep. 107. Chapter 2096 Laws of 1877 was as follows:

"An act to define the duties of judges of the Circuit
Court in charging juries.

*The people of the State of Florida, represented in Sen-*

*ate and Assembly, do enact as follows*: Section 1. Upon the trial of all common law and criminal cases in the several Circuit Courts of this State, it shall be the duty of the judge presiding on such trial to charge the jury only upon the law of the case; that is, upon some point or points of law or exceptions to evidence arising in the trial of said cause, and such charge shall be wholly in writing. If either of the parties or their attorneys present to the judge instructions in writing on the point or points of law or exceptions taken arising on the trial, it shall be the duty of the judge to declare in writing to the jury his ruling thereupon as presented, and pronounce the same to the jury as given or refused.

Sec. 2. *Provided,* That the several judges of the Circuit Courts of this State may charge juries trying all appeals from justices of the peace in civil or criminal cases, and all felonies not punished capitally, and misdemeanors, orally, unless they are requested by the State's attorneys or attorneys for defendants or plaintiffs, or the parties themselves, to charge said juries in writing as declared in the foregoing section, which request shall be in writing before the evidence in the case is closed.

Sec. 3. That of said instructions, as well those given as those denied, and also as well those prayed for by the parties or their attorneys as those declined by the said judge, shall be signed and sealed by the said judge, and be by him filed in the case and form a part of the record in the case, immediately after delivered.

Sec. 4. That all laws and parts of laws in conflict with this act be and the same are hereby repealed.

Approved March 2, 1877."

The first three sections of this Chapter were brought

forward into the Revised Statutes of 1892, with some modifications, constituting Sections 1088, 1089, 1090 and 1091, to which sections I shall have occasion to refer hereafter in this opinion. It should be noted that these sections of the Revised Statutes appear under the caption, "Charge to the jury in civil cases," but Section 2920 of the Revised Statutes of 1892 makes them applicable in all criminal cases, "except as to the charge in capital cases, which shall be wholly in writing and upon the law of the case only." Chapter 2096 of the Laws of 1877 remained unmodified until Chapter 3431 of the Laws of 1883 was enacted, which was as follows:

"An act regulating the practice in filing exceptions to the charges of the judges of the Circuit Court to juries in causes, civil and criminal, in this State.

*The People of the State of Florida, represented in Senate and Assembly, do enact as follows*: Section. 1. That in all civil causes in the Circuit Courts of this State, either party, plaintiff or defendant, may at any time after the jury retires, and before verdict rendered, except to any portion of the charge delivered by the judge, and the said judge before whom such cause is being tried may, if he deem such exception well taken, recall the jury and make any alteration or addition of or to such charge as may be deemed necessary and proper.

Sec. 2. It shall be lawful for either party in any civil cause, or for the defendant in any criminal cause, in said courts, after verdict rendered, to embody in a motion for a new trial any portion of the charge of the judge which may be deemed erroneous, which shall be taken as an exception to said charge, and if such motion for a new trial, upon the hearing, shall be refused, such refusal, together with the subject-matter of the charge

contained in such motion, may be made the subject of review by the Supreme Court.

Approved March 10th, 1883."

The only portion of this chapter which appears in the Revised Statutes of 1892 is embraced in Section 1092, which reads as follows: "1092. Portion of charge embodied in motion for new trial considered as excepted to.—Either party after verdict rendered may embody in a motion for a new trial any portion of the charge of the Court which he may deem erroneous, which shall be taken as an exception to said charge."

These Chapters and Sections have frequently been before this court for consideration and construction, and I shall now refer to some of the decisions. It is undoubtedly settled that prior to the enactment of Chapter 3431 of the Laws of 1883, "it must appear by the transcript, not only that the instructions were given or refused at the trial, but also that the party who complains of them excepted to them while the jury was at the bar." Coker and Scheiffer v. Hayes, 16 Fla. 368, text 379; Reed, Story and Sullivan v. State, 16 Fla. 564; Coleman v. State, 17 Fla. 206, text 211; Gallaher v. State, 17 Fla. 370, text 379; Baker v. State, 17 Fla. 406; Burroughs v. State, 17 Fla. 643; Southern Express Company v. VanMeter, 17 Fla. 783; Potsdamer v. State, 17 Fla. 895; Stewart v. Mills, 18 Fla. 57, text 60; Metzger v. State, 18 Fla. 481; Carter v. State, 20 Fla., 754; Blige v. State, 20 Fla. 742, text 750; Jones v. State, 18 Fla. 889; West v. Blackshear, 20 Fla. 457, text 466; Willingham v. State, 21 Fla. 761, text 784; Baker v. Chatfield, 23 Fla. 540, text 545, 2 South. Rep. 822; Parrish v. Pensacola & A. R. Co., 28 Fla. 251, 9 South. Rep. 696; Richardson v. State, 28 Fla. 349, 9

South. Rep. 704; Hodge v. State, 29 Fla. 500, text 505, 10 South. Rep. 556.

In the petition filed for a rehearing in Potsdamer v. State, 17 Fla. 895, text 904 *et seq.,* it was ably and ingeniously contended that, as Chapter 2096 of the Laws of 1877 required the judge to file all the instructions, those given as well as those prayed for and refused, and the charges when so filed became a "part of the record in the case," error could be assigned upon them without the necessity of exceptions thereto, though exceptions might still be resorted to, and so either of these modes might be selected in order to obtain a review by this court of errors assigned on the charges. A Pennsylvania statute, similar to the Florida statute, and certain decisions of the Pennsylvania Supreme Court construing said statute were relied upon to support this contention. Chief Justice Randall, in an able opinion upon the petition for rehearing, found in 17 Fla. 914 *et seq.,* said: "Upon considering the petition for a rehearing in this case and a review of the opinion already filed, we are still satisfied that we have conformed in our decision to the established rules of law prevailing here from the time of the organization of this court, and in all the States excepting Pennsylvania. That rule is that where it is alleged that an error has been committed by the judge upon a trial, except in rendering a judgment upon demurrer or plea in abatement, motion to quash, change of venue, and the like, or in rendering final judgment, the record must show that an exception was taken to the action of the court." Also see the able opinion in Barnes v. Scott, 29 Fla. 285, 11 South. Rep. 48, as to the office performed by a bill of exceptions and as to when it is necessary to take or note exceptions to rulings upon which a review is desired by an appellate court.

An exception, then, has always been necessary in order to have the action of the trial judge in giving or refusing instructions reviewed by this court. The question now to be answered is in what way can or must the matter be presented to this Court for review. As was said in a clearly reasoned and exhaustive opinion rendered by Chief Justice Raney, admittedly one of the ablest jurists that ever graced this court, from which opinion we have already quoted and shall doubtless have occasion to quote still again in this opinion: "For reasons of a similar nature we are precluded from considering the charge set out in a motion for a new trial, and complained of as being erroneous. There is before us no legal evidence that any such charge was ever given. Intervening the act of March 2nd, 1877, as to charging juries, (Secs. 34, 35, 36, p. 338 McClellan's Digest,) and that of March 10th, 1883, as to excepting to such charges in motions for a new trail, Chapter 3431 of the Statutes, p. 54 of the Session Laws of 1883, there were but two ways in which a charge given to a jury could be made a part of the record: First, by a bill of exceptions, general or special; and second, by the judge signing and sealing them, and filing them in the cause in accordance with the third section of the former act; (Southern Express Co. v. VanMeter, 17 Fla. 783; Potsdamer v. State, *Ibid*, 895;) and during this period a charge, whether given or refused, could not be reviewed or considered by this court unless the giving of the same, or the refusal to give it, was duly excepted to in the Circuit Court before the jury retired, and the charge was also incorporated into a bill of exceptions duly made up and therein stated to have been given or refused by the judge to the jury, and the ruling to have been excepted to; or, unless the instruction or charge

given was endorsed as being given or refused by the judge and excepted to, and all this was signed by the judge, and the whole filed in the cause. Potsdamer v. State, *supra;* Southern Express Co. v. VanMeter, *supra;* Sherman v. State 17 Fla. 888; Stewart v. Mills, 18 Fla. 57; Jones v. State, *Ibid,* 889; Myrick v. Merritt, 22 Fla. 335. This latter proceeding constitutes of itself a special bill of exceptions, and a charge thus shown to have been given and excepted to, or offered and refused, and the refusal excepted to, became as much the subject of review in the appellate court as if the same appeared in the more ordinary form of a bill of exceptions, duly settled after the trial, keeping in mind of course the rule as to the necessity for a presentation of the evidence to which the charge was applicable." Richardson v. State, 28 Fla. 349, text 351 *et seq.,* 9 South. Rep. 704.

It is perfectly clear to my mind that prior to the enactment of Chapter 3431 Laws of 1883, while charges given or refused, upon which error was predicated, might be brought up to this court for review by a special bill of exceptions, yet this special bill of exceptions had to be complete in itself, that is it had to show a strict compliance with the statute as to the signing, sealing and filing by the judge, and further that an exception was duly noted thereto. See authorities already cited, especially Richardson v. State, *supra,* and authorities cited therein. I would also refer to Hodge v. State, 29 Fla. 500, text 505, 10 South. Rep. 556; Sammis v. Wightman, 31 Fla. 10, text 44, 12 South. Rep. 526; Williams v. La-Penotiere, 32 Fla. 491, text 495 *et seq.,* 14 South. Rep. 157.

What change, if any, was wrought in this respect by Chapter 3431, Laws of 1883? I cannot answer the ques-

6—S. C.

tion better than by quoting the 4th and 5th head-notes
of the opinion in Parrish v. Pensacola & A. R. Co., 28
Fla. 251, 9 South. Rep. 696: "4. The embodiment of a
motion for new trial into a bill of exceptions is not
evidence of the truthfulness of any statement of fact
set forth in such motion, but is evidence only that such
a motion in the form presented was in fact made before
the court. And when such motion sets out or quotes a
charge purporting to have been given or refused by the
court, the giving or refusal of which is not evidenced
anywhere else in the record, or in any other manner ex-
cept by the transcript thereof into such motion, this
Court cannot consider such charge for the want of proper
evidence that it was in fact given or refused.

5. Section 2, Chapter 3431, Laws of Florida, 1883,
does not change this rule, but simply enlarges the time
within which exceptions may be taken to charges ac-
tually given. The meaning of said act is, that when a
charge actually given is embraced in a motion for a new
trial it shall be taken as an exception to such charge,
whether exception was taken thereto at the time it was
given or not, but it does not constitute such a motion
evidence of truthfulness of anything contained therein.
The fact that such charge was actually given must be
evidenced otherwise than by being incorporated in such
motion. either by being included as a part of the bill of
exceptions, or by the endorsement of the judge thereon,
over his signature, as being 'given' or 'refused,' as is
provided in Chapter 2096, Laws of 1877, otherwise such
charge cannot be considered by this Court." Also see
text of the opinion, pages 276 and 277. I would also
again refer to Richardson v. State, 28 Fla. 349, text
352 et seq., 9 South, Rep. 704, from which I quote the

following: "The question remaining to be considered is that of the effect of the act of 1883, referred to above, upon the practice as it stood at the time of the approval of such act. Its title is: An act regulating the practice in filing exceptions to the charges of the judges of the Circuit Courts to juries in causes civil and criminal in this State; and it provides (Sec. 1) that either party to a civil cause in the Circuit Court may at any time after the jury retires, and before verdict rendered, except to any portion of the charge delivered by the judge, and the judge may, if he deems the exception well taken, recall the jury and make any alteration of, or addition to, the charge as he may deem proper; and (Sec. 2) that it shall be lawful for either party in any civil cause, and for the defendant in any criminal cause, in such court after verdict rendered, 'to embody in a motion for a new trial any portion of the charge of the judge which may be deemed erroneous, which shall be taken as an exception to said charge, and if such motion for a new trial, upon the hearing shall be refused, such refusal, together with the subject matter of the charge contained in such motion, may be made the subject of review by the Supreme Court.' We have already held at this term in a case (Parrish v. P. & A. R. R. Co.) differing from this point only in that some of the charges set out in the motion for a new trial did appear in the bill of exceptions, whereas others did not, that the only purpose of the second section of this act was to relax the former rule which required exceptions to charges to juries to be taken at the time they were given, or before the jury retired; (Godwin v. Bryan, 16 Fla. 396; Reed vs. State, *Ibid,* 564;) and to permit the parties to a civil case, and the accused in a criminal case, to defer excepting until moving for a new trial, and

secure to an exception made in such a motion the same benefit of review as if it had been made according to the old practice before the jury retired. We are upon further consideration entirely satisfied with this conclusion, and that it was not the purpose of the second section, nor of any part of the act, to constitute a motion for a new trial a substitute for or equivalent of a bill of exceptions, or to make it record or other evidence of anything that has previously occurred on the trial as to charging the jury, or a substitute for or the equivalent of the provisions of the act of 1877 for making the charges given or refused a part of the record, without which, or other provisions changing the common law, such charges could not become a part of the record of the cause, or be considered by an appellate court, except through the instrumentality of a bill of exceptions, general or special.

A motion for a new trial is, from its nature, not intended as evidence of previous action by the Court. It is a proceeding taken by a party to a cause, and after verdict, and its purpose is to secure a new trial on account of alleged errors, which assumes to designate, that may have occurred in the trial or in the proceedings *in pais*, as contradistinguished from proceedings evidenced by the record proper, the errors in which are reached by motions in arrest of judgment; (Sedgwick v. Dawkins, 18 Fla. 335; Murray vs. State, 9 Fla. 246;) of which matters *in pais* no record is ever made except by a bill of exceptions at the instance of a party wishing to have them reviewed, or by specific statutory provision, as in the case of the act of 1877, *supra,* as to charges to a jury. The court, or judge, neither superintends, directs, nor controls the preparation of a motion for a new trial. Broward v. State, *supra,* and for the

reason that it is not intended as a memorial or record of the court's doings, but he does, and it is his duty to, see that the bill of exceptions speaks the truth, and nothing more or less, as to what it pretends to represent, and to make it do so, and to authenticate it as doing so, and for the reason that it is the only legal evidence or record of the proceedings in a common law case not evidenced by the record proper, *i. e.* the praecipe, process, pleadings, the judgment, and the ordinary record entries." Also see Shepherd v. State, 36 Fla. 374, 18 South. Rep. 773, from which I copy the 4th head-note. "Under the provisions of Section 2 of Chapter 3431, act of March, 1883, (Section 1092, Revised Statutes,) *only such charges as were actually given by the court,* and that were deemed erroneous, can be made the subjects of *exceptions* through the medium of embodiment in a motion for new trial. Exceptions to rulings of the court *'refusing to give requested instructions,'* cannot be taken or- reserved by embodying such *refused instructions* in a motion for new trial; but such exceptions must be taken and reserved *at the time of the court's refusal of the request to give them."* The principle enunciated in this headnote still remains the settled law of this Court and has been followed and approved time and again. See Lester v. State, 37 Fla. 382, 20 South. Rep. 232; Mathis v. State, 45 Fla. 46, 34 South. Rep. 287.

If the foregoing principles are correct, and they seem to have been established by the cited decisions, then it would follow, it seems to me, as a corollary or necessary sequence that the special or statutory bill of exceptions should be complete in itself, without reference to the ordinary or regular bill of exceptions. This seems to have been the view taken by this Court in Savannah, F. & W. R. Co. v. Brink, 44 Fla. 713, 33 South. Rep. 245. I think

a careful reading of the opinion will so indicate to any mind. I quote the following language from page 718 of the opinion: "Neither is there any evidence in the record, except as is made to appear by the bill of exceptions, that the judge's refusal to give these instructions was duly excepted to at the time of such refusal, and it is well settled that unless there is an exception to a charge given, or to the refusal to give one requested, it cannot be assigned as error in an appellate court, no matter how effectually such charge or refusal to charge may be evidenced in the transcript of record on writ of error." Also see Baggett v. Savannah, F. & W. Ry. Co., 45 Fla. 184, 34 South. Rep. 564; Parnell v. State, 47 Fla. 90, 36 South. Rep. 165; Colson v. State, 51 Fla. 19, 40 South. Rep. 183. The writer of this opinion was also the writer of the opinions in Parnell v. State, *supra,* and Colson v. State, *supra,* and he entertained then as now the views herein expressed. See especially the 14th headnote in the case of Colson v. State, *supra,* which reads as follows: "The special statutory bill of exceptions authorized by Sections 1090 and 1091 of the Revised Statutes of 1892 should be complete in itself, without reference to the regular bill of exceptions." I am strengthened in this conclusion by the fact that, as has been well said, "the very expression itself, being a 'bill of exceptions,' shows that it must contain exceptions." United States v. Jarvis, 3 Woodb. & M. 217, Fed. Cas. No. 15, 469; Kearney v. Snodgrass, 12 Ore. 311, text 312, 7 Pac. Rep. 309. Also see Vol. 1 of Words & Phrases Judicially Defined, 783 *et seq.,* topic "Bill of Exceptions." If this be true of the general expression, "bill of exceptions," why is it not equally true of the terms, "special bill of exceptions" and "statutory bill of exceptions?" In other words, does not either term *ex vi termini* imply

exceptions? Can there be such a thing as a bill of exceptions, whether regular, ordinary, special or statutory, with no exceptions contained therein? I think not. If so it would resemble the play of Hamlet with the part of the melancholy Dane omitted.

I am still further strengthened in this conclusion by the full and exhaustive discussion of the origin and office of a bill of exceptions in the opinions in Brown v. State, 29 Fla. 543, 10 South. Rep. 736; Glasser v. Hackett, 38 Fla. 84, 20 South. Rep. 820. Also see the authorities cited in these two opinions. While Chapter 3431, Laws of 1883 gave a party the privilege of excepting to a charge given in his motion for a new trial, it did not relieve him of the necessity and duty of properly evidencing the charge to an appellate court. This he could do by having it copied into and made a part of his regular bill of exceptions, of which bill the motion for a new trial, with the ruling thereon and exception thereto, all form a part.

There is still another argument which influences me in reaching the conclusion which I have announced. If, as was said by this Court in Parrish v. Pensacola & A. R. Co., 28 Fla. 251, 9 South. Rep. 696, Chapter 3431, Laws of 1883, "simply enlarges the time within which exceptions may be taken to charges actually given," how can it be claimed that it modified the preparation of bills of exceptions or changed any of the requirements as to the contents thereof? What effect did or could this act have upon what has been designated in opinions of this Court as "special bill of exceptions" or "statutory bill of exceptions?" Can it be successfully contended that it eliminated the requirement as to the showing of an exception to the given charge therein? I have already demonstrated from the decisions of this Court

which I have cited that this requirement existed under Chapter 2096, Laws of 1877, and still existed after the enactment of Chapter 3431, Laws of 1883, as to charges refused, whether they be brought up in the regular or special bill of exceptions. This is the requirement now under Section 1092 of the Revised Statutes of 1892. It is not apparent to my mind, when given charges are set forth in a special or statutory bill of exceptions, that the necessity for embodying an exception therein to the given charges as to which complaint is made has been obviated by the act of 1883 or Section 1092 of the Revised Statutes. I can read no such change into the statutes. As was said in Willingham v. State, 21 Fla. 761, text 784, "The Act of 1883, (Chapter 3431,) permitting a postponement of an exception to a charge to a jury till after verdict, *relates to nothing* else." Also see Richardson v. State, 28 Fla. 349, text 356, 9 South. Rep. 704.

It necessarily follows from the foregoing reasoning that, as the special or statutory bill of exceptions contains no exception to any of the given charges, in my opinion none of the assignments based upon any of said charges is properly before us for consideration, therefore we are precluded from declaring any error thereon.

However, even if it should be demonstrated that I am in error in holding that we cannot consider assignments predicated to us on given charges, which charges are evidenced to us only in a special or statutory bill of exceptions, when no exception to any of such charges is shown therein, then I would take the further position that such charges are not so evidenced to use that we can give them any consideration. In other words, in my opinion, the requirements of the statutes have been so disregarded that we are unable to say that the charges

of which complaint is made were ever actually given to the jury.

Not one of the paragraphs of the charge numbered from 1 to 14 inclusive, is marked by the judge as having been given by him to the jury. As we have already seen, at the close of paragraph numbered 14 and just preceding the signature of the judge appear the words, "signed, filed and made a part of the record in the cause this 20 day of October, A. D. 1905," but we have no evidence beyond the recital of the clerk, "And the said judge, the said parties having concluded to submit their testimony and the several matters and things aforesaid, did then and there deliver his charge to the jury as follows," which immediately precedes what purports to be the charge, that the charge in question or any paragraph or portion thereof was a matter of fact ever given to the jury. The recital by the clerk and the fact that the charge was copied into the record will not serve to authenticate and identify the charge so as to evidence to us that it was given or delivered to the jury. See the strong, clear and convincing language used in the headnotes and opinions in Parrish v. Pensacola & A. R. Co., supra, and Richardson v. State, supra. I have already copied in this opinion Chapters 2096, Laws of 1877, and 3431, Laws of 1883, in order that the language used in the cited opinions of this Court construing the same might be the more readily understood. I think it well to set forth now the present laws in force, which are as follows, Sections 1088 to 1092 inclusive, and 2920 of the Revised Statutes of 1892.

"Charge to the jury in civil cases.

1088. Duty of Judge to Charge Jury.—Upon the trial of all cases at law in the several Courts of this State, the judge presiding on such trial shall charge the jury only

upon the law of the case; that is, upon some point or points of law arising in the trial of said cause.

If, however, upon the conclusion of the argument of counsel in any civil case after all the evidence shall have been submitted, it be apparent to the judge of the Circuit Court, or County Court, that no evidence has been submitted upon which the jury could lawfully find a verdict for one party, the judge may direct the jury to find a verdict for the opposite party.

1089. When Charge To Be in Writing.—Every charge to a jury shall be oral, except when in the Circuit or County Court, either party or his attorney shall request in writing before the evidence is closed that it be in writing, when the judge shall commit it to writing.

When delivered it shall be filed in the case and become a part of the record.

1090. Instructions to Juries.—If either of the parties or their attorneys present to the judge instructions in writing on any point of law arising on the trial, it shall be the duty of the judge to declare in writing to the jury his ruling thereupon as presented, and pronounce the same to the jury as given or refused.

1091. To Be Signed and Filed.—Said instructions, as well those given as those denied, shall be signed by the said judge, and be by him filed in the case immediately after delivery or refusal and form a part of the record in the case.

1092. Portion of Charge Embodied in Motion for New Trial Considered as Excepted to.—Either party after verdict rendered may embody in a motion for a new trial any portion of the charge of Court which he may deem erroneous, which shall be taken as an exception to said charge.

2920. Charges of the Court.—The rules of law relative to instructions and to the charge of the Court in civil cases shall obtain in all criminal cases, except as to the charge in capital cases, which shall be wholly in writing and upon the law of the case only."

Section 1089 was amended by Chapter 4388 of Laws of 1895, so as to read as follows: "Section 1089. When Charge To Be in Writing.—Every charge to a jury shall be oral, except when in the Circuit, Criminal Courts of Record or County Courts, either party or his attorney shall request in writing before the evidence is closed that it be in writing, when the judge shall commit it to writing. When delivered it shall be filed in the case and become a part of the record."

The changes made in the Revised Statutes and in Chapter 4388, Laws of 1895, are obvious, but the force and applicability of the language used in Parrish v. Pensacola & A. R. Co., *supra,* are in no wise impaired. As evidence of this fact, see Savannah F. & W. Ry. Co. v. Brink, *supra;* Braggett v. Savannah, F. & W. Ry Co., *supra;* Parnell v. State, *supra;* Colson v. State, *supra.*

It not having been evidenced to us that any of the instructions of which complaint is made were ever given to the jury, we cannot consider them or the assignments based thereon.

So far as we are informed at all, the charge copied into the special bill of exceptions, if indeed it may be so designated when no exception is contained therein, the paragraphs of which are numbered from 1 to 14, constituted one entire charge which was given by the judge of his own motion, but, in view of the entry inserted therein by the clerk as to the omission of "Charges Nos. 8, 9, 10, 11," I am by no means assured of this fact. It

may well be that these numbered paragraphs constituted separate instructions. The clerk seems to have so considered them, as undoubtedly did the attorneys for the defendant, for the reason that they so refer to them in their motion for a new trial. If they are separate instructions, then only the instruction numbered 14, which is marked as "signed, filed and made a part of the record" by the trial judge, is so evidenced to us as to be before us for consideration. This instruction is set forth in subdivision III of the opinion prepared by Mr. Justice Parkhill, and I concur in the conclusion reached by him, as stated therein, that "there was no error here."

Not believing that any of the charges given by the Court are before us for consideration, so that we could examine the assignments predicated thereon and determine whether or not any error was committed in the giving of any of the instructions complained of, for the reasons which I have already stated, I might well pause here and decline to make any further examination into the assignments discussed in Mr. Justice Parkhill's opinion or to express any opinion on the merits thereof. However, assuming that the charges discussed by him are properly before us, there is still another reason which, in my opinion, should prevent us from declaring reversible error therein. It is made to affirmatively appear to us that only a portion of the charge or instructions given to the jury is included in the special or statutory bill of exceptions or is brought before us in any way so that it could be considered. This appears in the motion for the new trial itself, in the order of the judge overruling the same, in the so-called special or statutory bill of exceptions, as well as elsewhere in the transcript, so far as the same may be considered. Only certain paragraphs of the charge or instructions given have been excepted

to, if indeed exceptions have been made to appear to any portion thereof, or errors assigned thereon. As was said in Reynolds v. State, 34 Fla. 175, text 180, 16 South. Rep. 78: "We can not consider these assignments. The rule in this respect has been thus stated: 'Where a part of a charge is excepted to, the whole charge should be considered, and if the charge considered as a whole is free from objection urged the exception should be overruled.' Andrews v. State, 21 Fla. 598. A similar rule has been laid down in Pinson v. State, 28 Fla. 735; Smith v. Bagwell, 19 Fla. 117; Terry v. Buffington, 11 Ga. 337; S. C. 56 Am. Dec. 423; Elliott's Appellate Procedure, Section 193. Not having the whole charge before us we can not tell how these portions not brought before us might have modified or affected the construction of the paragraphs excepted to. All presumptions being in favor of the ruling of the Court below, we could not find reversible error, upon being shown only two isolated paragraphs of the charge given by the Circuit Judge. In order for us to consider exceptions taken to the instructions given by the Court in its charge to the jury, the whole charge should be brought up by bill of exceptions." Also see Ellis v. State, 25 Fla. 702, text 710, 6 South. Rep. 768; Willingham v. State, 21 Fla. 761, text 780; Robinson v. State, 24 Fla. 358, text 360, 5 South. Rep. 6; Gray v. State, 42 Fla. 170, 28 South. Rep. 53; Richard v. State, 42 Fla. 528, 29 South. Rep. 413; Knight v. State, 44 Fla. 94, 32 South. Rep. 110; Starke v. State, 49 Fla. 41, 37 South. Rep. 850; McCoy v. State, 40 Fla. 494, 24 South. Rep. 485; Mathis v. State, 45 Fla. 46, 34 South. Rep. 287; Ward v. State, 51 Fla. 133, 40 South. Rep. 177. In considering objections to a portion of a charge how can we consider the entire charge, as,

under the cited decisions, we are required to do, unless the entire charge is properly presented to us for consideration? In my opinion, in criminal cases at least, where error is predicated upon a portion of a charge or instructions, the entire charge or instructions should be brought up. I think Rule 103 found on pages 34 *et seq.* of the Rules prefixed to 14 Fla., which still applies to the making up of transcripts and the preparation of bills of exceptions, so contemplates and requires. See Gallaher v. State, 17 Fla. 370, text 380. That every presumption is in favor of the correctness of the rulings of the trial Court, see Clements v. State, 51 Fla. 6, 40 South. Rep. 432, and authorities therein cited. Also see Carter v. State, 22 Fla. 553. The only exception to the rule, so far as I am informed, is where the charge complained of is radically wrong and clearly announces an erroneous proposition, so that it could not be cured by any other instructions which might have been given. See Sigsbee v. State 43 Fla. 524, 30 South. Rep. 816; Lane v. State, 44 Fla. 105, 32 South. Rep. 896. I do not think that either that paragraph of the charge given by the trial judge numbered 13, copied in subdivision 1 of Mr. Justice Parkhill's opinion, or that paragraph of the charge numbered 4a, copied in subdivision II of his opinion, both of which charges he discusses in the opinion and declares them to be erroneous to such an extent as to work a reversal of the judgment, falls within the exception to the rule which I have just set forth above.

In the absence of a statutory provision to the contrary, I believe the general rule to be that "A Court of review will not consider the assignment of error as to instructions unless the entire charge or all of the instructions given and refused are made part of the record by a bill

of exceptions or other proper manner." Hughes' Instructions to Juries, Section 359. Also see 1 Blashfield's Instructions to Juries, Section 374, 375; Ency. Pl. & Pr. 479, 482.

If it be true that all the instructions are required to be properly before the appellate court, as I believe it is, then, in the absence of all instructions, this fact alone would prevent such court from declaring reversible error upon certain portions of the charges or instructions upon which errors are assigned.

I might stop here, but, as it is a capital case in which the death sentence has been pronounced, *in favorem vitae,* I am willing to go still further in my examination of the errors assigned.

Subjecting the two charges copied in subdivisions I and II of Mr. Justice Parkhill's opinion to a searching analysis, I find that each one of such charges contains two or more distinct propositions of law and yet each of the charges was excepted to as a whole. It is settled law in this Court that such an exception must fall if any one of the propositions in the charge so excepted to is correct. See Wood v. State, 31 Fla. 221, 12 South. Rep. 539; May v. Gamble, 14 Fla. 467, text, 492; John D. C. v. Julia, 16 Fla. 554; Dupuis v. Thompson, 16 Fla. 69; Burroughs v. State, 17 Fla. 643; Carter v. State, 20 Fla. 754; Post v. Bird, 28 Fla. 1, 9 South. Rep. 888; Pinson v. State, 28 Fla. text 753, 9 South. Rep. 706; Simth v. State, 29 Fla. 408, 10 South. Rep. 894; Campbell v. Carruth, 32 Fla. 264, 13 South. Rep. 432.

I shall not undertake now to analyze these two charges set forth in Mr. Justice Parkhill's opinion, which he declares contain reversible error. A most casual examination discloses that each one has two or more propositions

of law therein, and there is at least one correct proposition of law in each charge which is sound, therefore, these assignments must fail.

One other point I think it well for me to touch upon. I find in the transcript, immediately after charge numbered 44, the following:

"Charges for Deft.

2

The premeditation which the law requires to constitute murder in the first degree need not be for any particular length of time; that it is sufficient if the premeditation was but for a moment, provided that the action of the slayer was the result of such premeditation. The use of the word 'moment' does not imply less time than was necessary for deliberating upon the subject of the killing, and forming a distinct design or determination to kill of which the defendant was fully conscious before firing the fatal shot. The premeditation or deliberation need not be for any particular length of time, but it of course must be of sufficient duration to enable the slayer, under the circumstances of each case, to form a distinct and conscious intent to kill.

3

The question of premeditation is one of fact for the jury, who must say whether the killing was the result of an intention formed upon premeditation of the subject, and consequently murder in the first degree; or on the contrary, that the circumstances were such that the killing was not preceded by deliberation on the subject resulting in the formation of such a design to kill.

4

An intention may not be murder in the first degree

when done in the heat of passion or anger and following a sufficient provocation so close in time as to raise the presumption that it was the result of sudden impulse and without premeditation, or when committed under such circumstances as to show that the mind was not fully conscious of its own intention. Given J. B. Wall, Judge."

As we see, the charge was marked "given," but we have no evidence that it was ever filed and made a part of the record, as seems to be required under the cited decisions of this Court. However, in my opinion, this charge is just as much before us for consideration as any other. The similarity between this charge and the one copied in subdivision II of Mr. Justice Parkhill's opinion, upon which the defendant predicates error, will be apparent at a glance. I understand the law to be well settled that a party will not be permitted to be heard to complain in an appellate court of the giving by the trial Court of any instruction, even though erroneous, which was substantially similar to one requested by him. Sec. 3 Cyc. 248, and numerous authorities cited in note 88; 2 Ency. Pl. & Pr. 525, and authorities cited.

It does not seem necessary for me to say more, though I have carefully examined every error assigned which has been urged before us, and I do not hesitate to declare that I have been unable to detect any reversible error therein.

COCKRELL, J. (*dissenting*) : My views of this case differ in some respects from the views of my brothers, and for this reason I shall state them briefly in a separate opinion.

Assuming for the moment that the two charges set forth at length in the first and second subdivisions of the opinion by Mr. Justice Parkhill are legitimately in the record

7—S. C.

and proper bases for assignments of error, the assignments actually filed, as appears not only from the statement of them in that opinion, but likewise from the transcript which has been examined by me, are too broad in their scope to be sustained.

The charge upon the duties of the jury as triers of fact is in large part taken from repeated adjudications of this Court, and is not subject to criticism. It is broken up into distinct sentences, embracing separate subject-matters, and only the last sentence which contains a distinct and complete proposition of law, is found to be objectionable. Under the decision of this court in McCoggle v. State, 41 Fla. 525, 26 South. Rep. 734, the defect cannot avail the plaintiff in error for want of a proper assignment. This difficulty did not actually exist in the Hampton case, 50 Fla. 55, 39 South. Rep. 421. There the specific portion of the charge found objectionable formed a distinct "ground" in the motion for a new trial, which was assigned for error.

The same fixed settled rule of this Court applies equally and fatally to the second charge, in my opinion. The last sentence in the charge may be subject to the criticism that it tends towards a charge upon the facts, but the assignment is not directed to this point, though the argument of counsel for the plaintiff in error apparently is.

The trial judge was not in this charge attempting a definition of the statutory words "premeditated design." That we must assume had been given in some previous charge, and if we go to the transcript and can consider the charges therein it will be found the Court gave the definition taken from the Lovett case, 30 Fla. 142, 11 South. Rep. 550. Each charge should produce some progress, and it would be a never-ending process should we require a trial judge

to repeat a full and complete definition of each element of the law bearing upon the offence whenever that element is mentioned. The analysis of the charge in the opinion of Mr. Justice WHITFIELD shows its conformity to our previous decisions.

I should be content to rest here and simply record myself as being for an affirmance in so far as the record is disclosed in the opinion concurred in by Division B, except that I feel so keenly the attempt to overthrow a long line of unanimous decisions of this Court, beginning with Savage and James v. State, 18 Fla. 909, decided in 1882, and coming down as late as Olds v. State, 44 Fla. 452, 33 South. Rep 296, decided in 1902. This question was gone into at great length in Cook v. State, 46 Fla. 20, 35 South. Rep. 665, and I shall not repeat here the arguments there used except to say that to one reading the various opinions in that case these facts clearly appear : Our statute covering murder in the first degree stands exactly as when originally enacted in 1868, at which time New York and Wisconsin had similar statutes, upon which the same construction had been placed by the highest courts of those two States as was subsequently adopted by us in Savage and James v. State, *supra*, the opinion being delivered by Chief Justice RANDALL, a native of New York, who was admitted to the bar in that State, subsequently practiced law in Wisconsin, whence he came to this State; and was appointed Chief Justice of this Court the year the statute was enacted. There were those in New York who did not approve the statute as there defined, but the remedy applied was not through the courts by a reversal of its definition, but through the Legislature by a change of the statute, incorporating therein the words "deliberate and" before the words "premeditated design." This change in the statute

not only justified, but necessitated a change in the judicial definition.

Since 1868, there have been many trials for homicide in Florida, and charges taken from Savage and James and the Ernest cases have been most numerously given. If hardships have resulted the Legislature has met in session after session with no attempt so far as I am advised to change this statute, certainly no change has been made; while there have been changes in the statutes affecting lower grades of homicide. There have been moreover two general revisions of the statutes, still no change in the law. Until the Cook case this Court was consistent and unanimous; but, even the strenuous opinion there filed, urging a change in the law through the fiat of this Court, did not affect a Legislative change in the crime of murder in the first degree.

Personally I feel that the drafting of model charges should be left to the textbook writers; 'the sphere of activity, belonging exclusively to the Court, involved in the authoritative decisions of the actual questions presented on the record, is sufficiently comprehensive to absorb all our time, energies and capacities. As to the charge proposed here, I shall say merely that it bears a striking similarity or kinship to the one disapproved in strong terms by this Court in the Savage and James case, supra.

Should we go to the record and be able to consider instructions requested by the plaintiff in error marked given and signed by the trial judge, we would there discover that the accused himself secured instructions based on the Ernest and kindred cases. Can he be heard to complain because the Court followed his construction of the law?